509 So.2d 588 (1987)
STATE of Louisiana
v.
James FLOWERS a/k/a James Rose.
No. 86-KA-749.
Court of Appeal of Louisiana, Fifth Circuit.
May 1, 1987.
*589 John H. Craft, Gretna, for defendant-appellant.
Dorothy A. Pendergast, Asst. Dist. Atty., Gretna, for plaintiff-appellee.
Before CHEHARDY, GRISBAUM and WICKER, JJ.
CHEHARDY, Chief Judge.
Defendant, James Flowers, appeals his conviction of first degree murder (LSA-R.S. 14:30). Defendant was previously tried and convicted of the identical offense and received a death sentence. After various appeals, the conviction was set aside and the case was remanded for a new trial. After his second trial by jury, defendant was again convicted of first degree murder and sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence.
In the present appeal, defendant asserts that the trial judge erred in admitting into evidence prejudicial photographs of the victim's body. He also contends the evidence was insufficient to justify the verdict, and further requests the court to review the record for patent error.
*590 The facts show that on October 23, 1981 Detective Dennis Dunn was called to the scene of the murder of 70-year-old Madeline Malmstrom. The victim's body was found and her death reported by her son Thomas Malmstrom. Mr. Malmstrom reported that he went to his mother's house for a visit, but prior to entering the house he noticed a partially opened window on the right side of the house and a cinder block placed on the ground below the open window. He looked in the window and saw the room had been ransacked. After calling for his mother and receiving no answer, he entered the house through the window. While walking through the other rooms of the house, which had also been ransacked, Mr. Malmstrom discovered his mother's body lying near her bedroom doorway.
During Detective Dunn's investigation, he observed a missing window pane in the open window. He further observed that all the other windows were locked, as was the rear door of the house. The front door, however, was found to be unlocked. After viewing the body of the victim, Detective Dunn also observed unusual marks on the neck of the victim, in addition to her other injuries. Those ridge-like marks were photographed during the autopsy.
On the day following the murder, the defendant was stopped while in his car by Detective Glen Michele. Several items of jewelry, namely two Mardi Gras medallions, a gold barrette, a stick pin and a heart on a chain were found on the passenger floorboard of the defendant's vehicle. The defendant was transported to the police station. While there, a gold chain with a plastic and diamond medal was removed from the defendant's neck by Detective Dunn. Also seized from the defendant were a pair of tennis shoes and a belt.
The jewelry was identified at the police station as belonging to the victim by the victim's son and her sister, Florence Mullen. On October 28, 1981, a ring, matching the necklace taken from defendant's neck, was brought to the police station by Dorothy Wallace. She stated the piece of jewelry had been given to her by defendant.
During defendant's detention he gave a statement to Detective Dunn. In that statement he alleged that he went to the victim's house with a friend, Olin Grant, who placed the cinder block under the window. Defendant stated he boosted Grant into the house and then left the scene. He asserted he went to sit on the street corner until he heard a scream from the Malmstrom house. Defendant said when he heard the scream he ran back to the house where he met Grant coming out of the front door. Defendant stated the two then ran some distance from the house and when they stopped running Grant gave him $80.00, telling him to keep $40.00 and to hold $40.00. Defendant said at that time Grant departed, walking toward the victim's house. After waiting a half an hour for Grant to return, defendant stated he began walking away. As he was walking, he again met Grant, at which time Grant retrieved the $40.00 defendant was holding for him and gave defendant the jewelry subsequently identified as belonging to Mrs. Malmstrom. Defendant said the two then parted company.
Defendant's tennis shoes and belt, taken from him when he was detained, were given to the FBI crime lab, for analysis, along with a photograph of the victim's neck. At trial, William McInnis, special agent for the FBI, was stipulated as an expert in forensic serology and blood stain identification. After analyzing the belt and shoes he determined that the belt and the right shoe each had a small human blood stain, although each stain was too small to allow an analysis as to blood type. David Attenberger, special agent for the FBI who was qualified as an expert in shoe print identification, compared the sole of defendant's tennis shoes to ridge marks on the victim's neck and testified that the two corresponded.
Dr. Alvaro Hunt, pathologist for the Jefferson Parish Coroner's Office, was also qualified as an expert at trial. He testified that he performed the autopsy of the victim. The results showed the victim had two black eyes, her mouth was swollen, her teeth were loose, her jaw was fractured and ribs were broken. Signs of hemorraging *591 were present in her neck and the right half of her brain. A vaginal examination indicated sexual intercourse occurred shortly before the victim's death. Dr. Hunt determined that both the injuries to her neck and to her head could have caused her death.
At trial the victim's sister testified that the victim was not dating anyone and was not in the habit of bringing men home. She also testified that the jewelry seized from the defendant belonged to the victim, which the victim normally kept in her dresser drawer. In addition, the victim's son testified that, two weeks prior to the murder, he had hired the defendant to mix concrete. The job was performed at the victim's house. Cross-examination revealed that the son had a previous record. However, he denied selling the defendant narcotics.
Finally, Dorothy Wallace was called to testify. She stated that defendant presented her with a ring, later identified as Mrs. Malmstrom's, which she turned over to the police. She further testified that prior to the trial defendant told her to tell the court that Olin Grant gave her the ring.
In defendant's first assignment of error he contends the trial judge erred in admitting into evidence two color photographs taken during the autopsy of the victim showing the ridge marks on the victim's neck. The defendant argues that black and white photographs were available and were sufficient to show the abrasions and that the probative value of the color photographs was outweighed by their prejudicial effect.
Photographs are admissible when they illustrate any facts, shed light upon any factor at issue in the case, or reliably describe the person, place or thing depicted, provided that the probative value of the photographs outweighs any prejudicial effect. State v. Burdgess, 434 So.2d 1062 (La.1983). Generally, photographs of a homicide victim's body which show the fatal wound are relevant to prove the death, to corroborate other evidence of the cause of death, to establish the location, severity, and number of wounds, and to prove the victim's identity. State v. Dean, 487 So.2d 709 (La.App. 5th Cir.1986), writ denied 495 So.2d 300 (La.1986). State v. Lane, 414 So.2d 1223 (La.1982). See also State v. Brogdon, 426 So.2d 158 (La.1983). A trial court's determination of the admission of gruesome photographs will not be disturbed on appeal unless the prejudicial effect of the photographs clearly outweighs the probative value. State v. Brogdon, supra; State v. Lindsey, 404 So.2d 466 (La.1981).
In this case, two black and white photographs of the victim's neck were introduced during the testimony of the FBI expert. Two identical color photographs were introduced during the testimony of the pathologist. The photographs of Mrs. Malmstrom's neck and face injuries were relevant to the State's case to indicate the severity of the beating the victim received, and to show what appears to be defendant's footprint on her neck. The latter evidence serves to negate the defendant's version of the events which transpired on the day of the murder and places him in the house at the scene of the murder. Although the introduction of the color photographs may appear to be cumulative evidence, thereby lacking sufficient probative value to outweigh their prejudicial effect, our review of the photographs leads to the opposite conclusion. The probative value of the color photographs in this instance outweighed any possible prejudicial effect, and further the photographs were not "so gruesome as to `overwhelm reason' and cause a jury to lose sight of the need for the prosecutor to establish with sufficient independent evidence the guilt of the accused." State v. Redwine, 337 So.2d 1041, 1043 (La.1976). See also State v. Lindsey, supra. Consequently, we find the trial court did not err in allowing the introduction of the color photographs into evidence.
In defendant's second assignment of error, he alleges the evidence presented at trial was insufficient to justify the verdict of first degree murder.
In determining the sufficiency of the evidence, the constitutional standard *592 used by the appellate court is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty of each element of the crime charged beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 mandates that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." This test is not separate from the Jackson standard, but is rather a helpful methodology for determining the existence of reasonable doubt. State v. Chism, 436 So.2d 464 (La.1983). Ultimately, all evidence, both direct and circumstantial, must be sufficient to show that the defendant is guilty beyond a reasonable doubt. Due process requires no greater burden. State v. Porretto, 468 So.2d 1142 (La.1985).
In the present case, there was a co-perpetrator, Olin Grant, who pled guilty to manslaughter. The defendant was convicted as a principal to first degree murder in violation of LSA-R.S. 14:30. The statute defines first degree murder in pertinent part as:
"A. * * * the killing of a human being:
(1) When the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of aggravated kidnapping, aggravated escape, aggravated arson, aggravated rape, aggravated burglary, armed robbery, or simple robbery; * * *."
Principals to a crime are defined in LSA-R.S. 14:24 as "All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime ..." In order to be convicted of a crime, the State must prove more than the defendant's mere presence at the crime scene. The State must also prove the intent of the defendant. "Thus, an individual may only be convicted as a principal for those crimes for which he personally has the requisite mental state." State v. Holmes, 388 So.2d 722, 726 (La. 1980). In the case of first degree murder, the requisite mental state is that the defendant had the specific intent to kill or inflict great bodily harm. State v. Holmes, supra. LSA-R.S. 14:30.
During trial of this matter, the evidence showed that the defendant admitted being at the scene of the crime on the night of the murder although he stated he remained outside after assisting Grant to enter the house. The pathology expert revealed that the victim had been severely beaten, her neck was stepped on and she was strangled. He further testified that her death resulted from either her head or neck injury or both. The forensic experts testified that the ridge marks on the victim's neck matched the tread on defendant's tennis shoes and that the markings were also consistent with placement of a belt around her neck. The evidence further showed that blood was found on defendant's belt and one of his tennis shoes, that defendant was found to be in possession of items of jewelry belonging to the victim, and that the victim's house had been ransacked. Testimony by the pathologist revealed that there was evidence of sexual activity but that the 70-year-old victim did not have a boyfriend, nor was she in the habit of entertaining male friends at home.
In viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found that the defendant was a principal to the beating which caused the victim's death, as evidenced by his footprint on her neck. Furthermore, the extent of the victim's injuries supports a conclusion that the defendant had the intent to kill or commit great bodily harm. See State v. Kahey, 436 So.2d 475 (La.1983).
Likewise, the evidence supports a finding that the defendant was engaged in one of the felonies enumerated in R.S. 14:30, to wit: aggravated burglary. LSA-R.S. *593 14:60 defines aggravated burglary as follows:
"Aggravated burglary is the unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with the intent to commit a felony or any theft therein, if the offender,
(1) Is armed with a dangerous weapon; or
(2) After entering arms himself with a dangerous weapon; or
(3) Commits a battery upon any person while in such place, or in entering or leaving such place."
Here, the defendant admitted that his co-perpetrator broke into the victim's house. Although he contended that he waited outside, defendant's presence inside the house was confirmed by the footprint he left on the victim's neck. That the defendant had the intent to commit a theft is supported by the fact that the house had been ransacked and that he was found in possession of objects actually taken from the victim's house. Furthermore, the defendant and his co-perpetrator committed a battery upon the victim, beating her so severely that it resulted in her death. Consequently, we find the evidence supports a finding that the defendant is guilty of first degree murder beyond a reasonable doubt.
Finally, defendant requests the court to review the record for patent error. In this regard, LSA-C.Cr.P. art. 920 provides: "The following matters and no others shall be considered on appeal: (1) An error designated in the assignments of errors; and (2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence."
For the purpose of an error patent review the "record" in a criminal case includes the caption, the time and place of holding court, the indictment or information and the endorsement thereon, the arraignment, the plea of the accused, the bill of particulars filed in connection with a short form indictment or information, the mentioning of the impaneling of the jury, the minute entry reflecting sequestration in a capital case, the verdict and the judgment or sentence. State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Brooks, 496 So.2d 1208 (La.App. 5th Cir.1986). After our review of the record, we find no patent errors are present in this case.
Accordingly, the defendant's conviction and sentence are hereby affirmed.
AFFIRMED.