670 So.2d 1263 (1996)
STATE of Louisiana
v.
Clinton H. FORREST.
No. 95-KA-31.
Court of Appeal of Louisiana, Fifth Circuit.
February 14, 1996.
*1265 Linda Davis-Short, Staff Appellate Counsel, Indigent Defender Board, Gretna, for appellant.
John M. Mamoulides, District Attorney and Leigh Ann Wall, Assistant District Attorney, 24th Judicial District, Parish of Jefferson, Gretna, for appellee.
Before GRISBAUM, GOTHARD and CANNELLA, JJ.
CANNELLA, Judge.
Defendant, Clinton H. Forrest, appeals from his conviction for second degree murder and sentence to life in prison. For the reasons which follow, we affirm the conviction, amend the sentence and affirm as amended and remand.
On the morning of January 13, 1994, Delceena Smith (Delceena) was with her three children at her home at 611½ Americus Street in Gretna. The victim, Danny Stevenson (Stevenson), an acquaintance of more than two years and Delceena's former boyfriend, was also at the apartment, having spent the night there. After the children left for school, Delceena went into the bathroom to take a shower. Stevenson sat on the toilet seat and talked with her.
Delceena finished showering at about 7:30 a.m. and was stepping out of the bathtub when there was a knock on the front door. Stevenson left the bathroom, closing the door behind him. Stevenson opened the front door and Delceena heard him say, "I thought I told you not to come around here no more." Another man answered, "You don't know who you're fing with. I'll blow your brains out." Stevenson responded, "Well, if you're going to shoot me, go ahead. You have to kill me." Delceena then heard a gunshot.
After a brief hesitation, Delceena went from the bathroom to the bedroom, where she wrapped herself with a bed sheet. She then went to the kitchen and found Stevenson on the floor, wounded but still alive. She immediately called 911 and reported the shooting. Officer Dwayne Munch (Munch) of the Gretna police arrived five to seven minutes later and EMT's arrived shortly thereafter. Stevenson was pronounced dead at 8:12 that morning.
Munch interviewed Delceena and she described the shooting. She did not, however, disclose defendant's involvement even though she later stated that she recognized the second voice at the door as that of defendant, Clinton Forrest, her current boyfriend. Delceena received four telephone calls at her home after police arrived, including one from defendant, although she did not disclose that to the officers at the time. Munch, the crime *1266 scene technician, took gunshot residue swabs from Delceena's hands.
Other officers, including Sergeant Neal Giroir (Giroir), arrived at the scene. Giroir met with Delceena. Because she was the only person at the scene when the shooting took place, he considered her a suspect in the murder. Giroir transported Delceena to the police station, where she was advised of her rights and was told she was a suspect. She was at the station until 1:00 a.m. on January 14. She spoke with two or three police officers during that time, including Giroir. She gave her written consent to a search of her apartment. At about 2:00 p.m. on January 13, after being at the police station for six hours, she informed the officers, for the first time, that she believed that defendant was the murderer and she identified defendant in a photographic lineup.
Arnesta Smith (Arnesta), Delceena's sister, was interviewed by the police. She was concerned for her sister's safety and telephoned Delceena immediately upon learning of the shooting. Delceena assured her that she had not been harmed. Arnesta gave a statement later that day at the police station. However, she did not tell the police that she had any knowledge of the crime or facts concerning the crime, although she later testified to the contrary.
On the evening of January 13, defendant telephoned Veronica St. Amant (Veronica), Delceena and Arnesta Smith's mother, and told her that he would be going to her house. Shortly thereafter, Delceena telephoned her mother from the police station and Veronica informed her that defendant had contacted her. Delceena then gave her mother a full account of the homicide. Police officers informed Veronica over the phone that they were going to her house to question her about the case.
On that evening, defendant arrived at Veronica's house at 4127 Lac Cuteure Street and she allowed him inside. Defendant asked her if she had any money and she said that she did not. He told her that he had "killed a nigger" and that the victim had "squealed like a pig."
At about 7:20 p.m. Detectives Laun Boudreau (Boudreau) and Claude Koenig (Koenig) of the Gretna Police Department arrived at Veronica's home in an unmarked vehicle and dressed in plainclothes. Noting that the apartment was well lit, they knocked on the front door. When there was no immediate response, Koenig went toward the back entrance of the duplex. Defendant, still inside the apartment, pulled his gun and went to the front door. Feigning a woman's voice, he asked who was there. Boudreau identified himself as a police officer. Defendant responded by running from the house through a rear entrance. Koenig heard a disturbance and then saw defendant run across the back yard. Defendant jumped the back yard fence, dropping a gun on the ground. Koenig yelled, "Stop, police", and pursued defendant. After chasing him a short distance, Koenig caught him and placed him under arrest. Defendant struggled with Koenig and resisted being handcuffed. Boudreau assisted in subduing defendant and there was a brief scuffle before the officers succeeded in handcuffing him. Boudreau read defendant his rights.
Koenig walked back to where the gun lay on the ground and watched over it until the crime scene technicians arrived.
Defendant was transported to the Gretna Police Criminal Investigations Division, where he was again apprised of his rights. Defendant's hands were swabbed for gunshot residue. Defendant waived his rights and said that he wished to give a statement. He refused the use of any recording devices. In response to questioning by Giroir and Detective John Davis, defendant stated that he had in fact made threats against Stevenson, but that he was "just talking." Defendant denied any knowledge of Stevenson's death. After one-half hour of questioning, during which time he made no inculpatory statements, defendant said that he wanted an attorney and medical treatment. The officers terminated the interview and sent defendant to the hospital for medical treatment.
Dr. Frazer MacKenzie of the Jefferson Parish Coroner's Office performed the autopsy on Stevenson's body. He found that Stevenson died of a gunshot wound to the chest, *1267 which went through the victim's left lung, aorta and right lung. The doctor removed bullet fragments from the victim's body. However, firearms expert, Louise Walzer (Walzer), found that the fragments did not have enough surface for any kind of match to the gun that was seized.
A grand jury investigation was conducted. Among other evidence presented, Arnesta changed her testimony from that given to the officers at the time of the homicide and implicated defendant.
On February 24, 1994, the Jefferson Parish Grand Jury indicted defendant for the crime of second degree murder, in violation of 14:30.1. On March 18, 1994 defendant was arraigned on the charge and entered a plea of not guilty. A jury trial was conducted on October 12 through 14, 1994.
At trial, Arnesta testified that she knew defendant for about two years and knew that he was a friend of Delceena's. She stated that at about 6:00 on the morning of the homicide, defendant came to her apartment at 2411 Margaret Ann Street, Building 6, Apartment 401. Defendant told Arnesta at that time, referring to Stevenson, that he was going to "knock that nigger's brains out." Arnesta did not see a gun on defendant at that time. She encouraged defendant to harm Stevenson, because Stevenson was known to have physically abused Delceena. There had been a confrontation between defendant and Stevenson as recently as January 8, when Stevenson went to Arnesta's apartment to find Delceena there with defendant. Stevenson had hit Delceena that day and police were called to the apartment after Stevenson refused to leave.
Defendant left Arnesta's apartment and returned at around 7:30 or 8:00 a.m. Defendant appeared intoxicated and was carrying a handgun. He wore the same clothes that he had worn earlier that morning, although she did not notice any blood on them. Defendant told Arnesta, "I shot the nigger." He then went into her bedroom and threw a gun on her bed. Arnesta identified State's Exhibit No. 22, a Colt "Trooper" .357 Magnum handgun that was retrieved from defendant when he was taken into custody, as the one defendant had in his possession at her apartment.
When she asked defendant whether Stevenson was dead, he replied that he did not know, but that Stevenson had "squealed like a pig." Arnesta testified that she did not give authorities a full account of the events of January 13 until she testified before the grand jury. She stated that she withheld the information because she was afraid of being implicated in the murder.
Delceena testified at trial that when defendant telephoned her on the morning of the shooting, he said to her, "You didn't hear nothing, right?" Delceena responded, "Right." Defendant then said, "You say you didn't know nothing, right?" She again said, "Right." Defendant said, "I love you," and hung up. Delceena also testified that she recognized the voice at the door, prior to the shooting, as defendant's.
Jim Churchman (Churchman) of the Louisiana State Police Crime Lab testified at trial that the swabs of Delceena's hands tested negative for gunpowder.
At the close of the case, the jury found defendant guilty as charged of second degree murder. Defendant filed a pro se motion for new trial, which was denied. The trial court also denied a defense motion for a lesser verdict or judgment of acquittal. On November 9, 1994, the trial judge sentenced defendant to life imprisonment at hard labor, without benefit or parole, probation or suspension of sentence. Defendant filed a motion for appeal.
On appeal, defendant assigns six errors and requests this court to review the case for any errors patent on the face of the record.

ASSIGNMENT OF ERROR NUMBER ONE
By this assignment of error, defendant argues that the trial court erred in allowing inflammatory evidence unrelated to the crime to be introduced into evidence. More particularly, defendant argues that the gun, State's Exhibit 22, retrieved when defendant was taken into custody, should not have been admitted into evidence because the state did not make a sufficient showing of a connection between the gun and the murder.
*1268 With some exceptions, all relevant evidence is admissible at trial. La.C.E. art. 402. "Relevant evidence" is that which tends to "make the existence of any fact that is of consequence to the determination of the action more probable than it would be without evidence." La.C.E. art. 401. Fruits and physical evidence of a crime as well as weapons used to commit a crime are relevant to show the commission of such crime and are, therefore, generally admissible at trial. State v. Foster, 263 La. 43, 267 So.2d 188 (1972). Relevant evidence may, however, be excluded at trial "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." La.C.E. art. 403.
Before it can be admitted at trial, demonstrative evidence must be properly identified. Accordingly, it must be established that it is more probable than not that the object is the one connected with the crime. The identification may be visual, that is, testimony that the object introduced is the one connected with the case. The identification may also be accomplished through chain of custody, by tracing the object from the time it was seized to the time it was offered in evidence. State v. Sweeney, 443 So.2d 522 (La.1983); State v. Landry, 388 So.2d 699 (La.1980), cert. denied, 450 U.S. 968, 101 S.Ct. 1487, 67 L.Ed.2d 618 (1981); State v. Kelson, 94-263 (La.App. 5th Cir. 11/16/94), 646 So.2d 1049; State v. Alexander, 621 So.2d 861 (La.App. 5th Cir.1993), writ granted and remanded for resentencing, 629 So.2d 376 (La.1993).
In the instant case, there was no eyewitness to the murder. However, several state's witnesses identified the gun introduced by the state. Arnesta testified that State's Exhibit 22 was the same gun that defendant brought to her house just minutes after the shooting. She stated that she was certain that this was defendant's gun because it was distinguished by rust from the nose to the butt. Veronica also identified the gun as the one defendant had in his possession when he went to her house on the evening of the murder. Koenig testified that the gun was the one he saw defendant drop as he fled from Veronica's house. He also identified State's Exhibit 35 as a photograph of the gun in question. While Koenig could not say that he actually saw the gun in defendant's hand, the detective did see the gun fall or drop from defendant's person. Koenig retrieved the weapon minutes later, after subduing defendant.
We find that the state clearly established that it was more probable than not that the gun introduced in evidence was the one used to commit the murder.
Defendant notes that Walzer, the state's firearms expert, could not say whether the bullet fragments recovered from Stevenson's body were fired by the gun that was introduced. Defendant also points out that Churchman's expert testimony revealed that no gunpowder residue test was done on the gun to determine whether or not it had been fired. Also, Churchman did not test the gunpowder residue kit on defendant. Therefore, defendant argues that the identification between the gun and the crime was defective.
Walzer did not testify that the gun retrieved from defendant did not match the bullet fragments taken from defendant. Rather, she testified only that testing for a match was impossible, since the pellet taken from the body did not have enough surface to allow for any kind of identification. Further, Churchman testified that he did not conduct the residue tests because the time that had elapsed from the time of the shooting to the time of the tests would negate their accuracy.
A proper foundation was laid for the introduction of the gun into evidence. Once a proper foundation has been laid, any further evidence that calls into question the positive identification between the weapon and the crime goes to the weight of the evidence rather than the admissibility. State v. Kelson, 94-263 at p. 9, 646 So.2d at 1052; State v. Landry, 388 So.2d at 704; State v. Sharlow, 493 So.2d 213, 218 (La.App. 5th Cir.1986), writ denied, 496 So.2d 329 (La. 1986).
Therefore, the trial court did not err in admitting the gun into evidence.

*1269 ASSIGNMENT OF ERROR NUMBER TWO

By this assignment of error defendant argues that the trial court erred in refusing to declare a mistrial when the prosecutor made improper argument during closing and in rebuttal. Defendant cites several instances wherein he argues that the assistant district attorney made improper remarks to the jury.
At the outset, we note that it is well settled that an objection to any alleged prejudicial remark must be contemporaneously entered or it will not be reviewed on appeal. State v. Anderson, 333 So.2d 919 (La.1976); State v. Wormser, 467 So.2d 58 (La.App. 4th Cir.1985) writ denied, 474 So.2d 946 (La. 1985); State v. Carter, 572 So.2d 1131 (La. App. 1st Cir.1990). Accordingly, the court will only consider the remarks to which defense counsel objected.
Closing arguments in criminal cases are restricted to evidence admitted at trial, to lack of evidence, to conclusions of fact that may be drawn therefrom and to the law applicable to the case. La.C.Cr.P. art. 774; State v. Messer, 408 So.2d 1354 (La.1982).
The trial court may grant a mistrial for certain inappropriate remarks that come within La.C.Cr.P. art. 770, which provides in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(3) The failure of the defendant to testify in his own defense;
Otherwise, an admonition to the jury may suffice, as provided in La.C.Cr.P. art. 771.
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark of comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
Mistrial is a drastic remedy and, except in instances in which mistrial is mandatory, is warranted only when trial error results in substantial prejudice to defendant, depriving him of a reasonable expectation of a fair trial. State v. Smith, 430 So.2d 31 (La.1983); State v. Triplett, 434 So.2d 1270 (La.App. 1st Cir.1983). Determination of the existence of unnecessary prejudice warranting a mistrial is within the sound discretion of the trial judge. State v. Smith, supra.
Defendant herein complains that certain statements made by the assistant district attorney warranted a mistrial because they made reference to defendant's failure to testify. More particularly, in his rebuttal argument, the assistant district attorney stated:
There's been no alibi defense presented in this case that he was somewhere else when this happened.
Defense counsel objected to this statement and moved for a mistrial. The court denied the motion.
Evidence presented at trial, or the lack thereof, are proper sources of argument. La.C.Cr.P. art. 774. In this instance, the prosecutor was merely making reference to the lack of evidence on a particular point. An alibi defense may consist of testimony or evidence other than the defendant's testimony. Thus, we find that the reference, made in this case by the prosecutor to the lack of an alibi defense, does not constitute a comment on defendant's failure to testify such *1270 that a mistrial was warranted. We find no error in the trial court ruling on this issue.
Defendant also argues that a mistrial should have been granted because of the prosecutor's mistaken reference to witnesses who actually did not testify.
At trial, Delceena stated that she had received certain telephone calls from defendant. She stated that at times her cousins listened to the calls on another line. In rebuttal, the prosecutor referred to "admissions" that defendant had made to Delceena's cousins, although they did not testify at trial. Defense counsel objected and requested a mistrial. The court denied the motion for a mistrial but did correct the mistake on the record.
It is clear from a reading of the argument as a whole that, while the prosecutor's comment was a misstatement of the evidence presented at trial, his error seemed inadvertent and not intended to mislead the jury. The mistake was corrected by the judge on the record. There is no showing here that the trial court's correction was not sufficient to insure defendant a fair trial. We find no error in the trial court's refusal to grant a mistrial because of this remark by the prosecutor.
Finally, defendant complains about certain remarks in the prosecution's rebuttal argument which seemed like statements of the prosecutor's personal opinion of defense attorneys rather than comments on the evidence.
Defendant lodged a continuing objection to these comments by the prosecutor, referring to defense tactics as "cheap shots" and stating that a criminal defense attorney has "a defense for everything" even if their client had "been caught in the act."
We find that these comments were in fact outside the scope of proper rebuttal argument, which is to be confined to answering the argument of the defendant. La. C.Cr.P. art. 774. However, we do not find that a mistrial is mandated because of them. Improper closing argument does not constitute reversible error unless the appellate court is thoroughly convinced that the remarks influenced the jury and contributed to the verdict. State v. Knighton, 436 So.2d 1141 (La.1983); State v. Soler, 93-1042 (La. App. 5th Cir. 4/26/94), 636 So.2d 1069, writs denied, 94-0475 (La. 4/4/94), 637 So.2d 450, 94-1361 (La. 11/4/94), 644 So.2d 1055; State v. Johnson, 93-2092 (La.App. 4th Cir. 6/30/94), 639 So.2d 1236. In the instant case, we do not find, from a reading of the argument as a whole and considering the entirety of the record, that these statements so influenced the verdict as to require reversal. Accordingly, we find no merit in defendant's assignment of error number two.

ASSIGNMENT OF ERROR NUMBER THREE
By this assignment of error, defendant argues that the trial court erred in allowing the prosecuting attorney to introduce into evidence a button photograph of the victim and Delceena. More particularly, defendant claims, without citing authority, that he was prejudiced by the admission in evidence of this photograph.
Photographs which illustrate any fact, shed light upon any fact or issue in the case, or are relevant to describe the person, place or thing depicted are generally admissible. State v. Flowers, 509 So.2d 588 (La. App. 5th Cir.1987); State v. Dixon, 620 So.2d 904 (La.App. 1st Cir.1993).
The photograph in question, State's Exhibit 42, was used to illustrate a fact already in evidence, that the victim had had a relationship with Delceena. The prosecutor did not dwell on the photograph, nor was it too graphic or inflammatory in nature. There is nothing to show that defendant's case was prejudiced by the admission of the picture. We find that this assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER FOUR
By this assignment of error defendant argues that the trial court erred in denying his motion for new trial. More particularly, defendant is arguing that the evidence presented was insufficient to support a verdict of guilty of second degree murder.
*1271 Defendant argues that, because there was no eyewitness to Stevenson's murder and none of the state's expert witnesses gave testimony tying defendant to the murder, the evidence was insufficient to support the verdict.
The constitutional standard for testing the sufficiency of evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based in proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Rosiere, 488 So.2d 965 (La.1986); State v. Honore, 564 So.2d 345 (La.App. 5th Cir.1990), writ denied, 569 So.2d 968 (La.1990).
The pertinent portion of the second degree murder statute, La.R.S. 14:30.1(A)(1), provides that "[s]econd degree murder is the killing of a human being [w]hen the offender has a specific intent to kill or to inflict great bodily harm." State v. Thorne, 93-859 (La. App. 5th Cir. 2/23/94), 633 So.2d 773.
The evidence presented in this case was circumstantial. The statutory rule as to circumstantial evidence is that, assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. La.R.S. 15:438. This statutory rule for circumstantial evidence does not provide a separate test from the Jackson standard to be applied in determining the sufficiency of evidence to sustain a conviction. Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational trier of fact beyond a reasonable doubt that defendant is guilty. State v. Anseman, 607 So.2d 665 (La.App. 5th Cir. 1992); writs denied, 613 So.2d 989, 613 So.2d 990 (La.1993); State v. Myers, 584 So.2d 242 (La.App. 5th Cir.1991), writ denied, 588 So.2d 105 (La.1991), cert. denied, 504 U.S. 912, 112 S.Ct. 1945, 118 L.Ed.2d 550 (1992). Specific intent is a state of mind and need not be proven as fact, but may be inferred from the circumstances of the case and the actions of the accused. State v. Graham, 420 So.2d 1126 (La.1982); State v. Yarbrough, 596 So.2d 311 (La.App. 3rd Cir.1992), writ denied, 599 So.2d 317 (La.1992).
There was circumstantial evidence admitted at trial to show that defendant killed Stevenson and that he had the specific intent to do so. Testimony showed that defendant, who at the time of the murder was Delceena's boyfriend, had previously quarreled with Stevenson, her former boyfriend. Defendant knew Stevenson was still seeing Delceena, and the situation apparently angered him. On the morning of the murder, defendant told Arnesta Smith he was going to hurt the victim. Delceena Smith, who knew both men well, testified that she heard and recognized defendant's voice at the door, quarrelling with the victim just before he was shot. Defendant then appeared at Arnesta's house less than an hour after the murder, holding a gun, and bragging that he had just shot Stevenson. Defendant admitted to Delceena, Arnesta and Veronica that he had committed the murder. It is also significant that defendant fled the scene of the murder and later attempted to flee from police.
Defendant complains that the testimony upon which his conviction is based came from Delceena, Arnesta and Veronica, none of whom were impartial witnesses. Delceena, defendant notes, was herself a suspect in the murder and did not implicate defendant until she learned she was a suspect. Defendant further notes that Arnesta did not disclose her dealings with defendant on the day of the murder until she testified before the grand jury. Veronica went to the police station several times while her daughter was held there for questioning on the day of the murder, but she did not implicate defendant until after he was arrested.
Although defendant is of the opinion that the state's witnesses were not credible, the jury apparently gave credit to the testimony of these three women. It is within a jury's sound discretion to accept or reject in whole or in part the testimony of any witness. State v. Zeno, 610 So.2d 268 (La.App. 5th Cir.1992).
The credibility of witnesses is not reweighed on appeal. State v. Matthews, 450 So.2d 644 (La.1984); State v. Zeno, 610 So.2d *1272 at 270; State v. Robinson, 598 So.2d 407 (La.App. 5th Cir.1992).
Considering the foregoing evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have found that the state proved all of the elements of the crime beyond a reasonable doubt. This assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER FIVE
By this assignment of error defendant argues that the trial court erred in failing to give him credit for time served. We agree.
The record shows that in sentencing defendant, the trial court failed to grant defendant credit for time served as required by La.C.Cr.P. art. 880. While the minute entry and the commitment show that defendant was accorded credit for time served, the transcript does not reflect that said credit was given. Where there is a discrepancy between the minute entry and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732 (La.1983). However, this sentencing error does not require reversal of sentence or remand for resentencing because it is not a matter of judicial discretion but is mandated by statute. See State v. Dorsey, 593 So.2d 1372 (La.App. 5th Cir. 1992). Therefore, we amend defendant's sentence herein to reflect that he be given credit for time served.

ASSIGNMENT OF ERROR NUMBER SIX
By this assignment of error defendant argues that the trial court failed to inform him of the prescriptive period for filing for any post conviction relief, as mandated by La. C.Cr.P. art. 930.8. We agree.
The transcript of defendant's sentencing reflects that defendant was not informed of the prescriptive period set out in La.C.Cr.P. art. 930.8. However, this failure is not grounds for reversal of the sentence. Rather, we remand the case to the trial court with instructions to inform defendant of the provisions of La.C.Cr.P. art. 930.8 by sending written notice to defendant within ten days of the rendering of this opinion and to file written proof in the record that defendant received such notice. See State v. Kershaw, 94-141 (La.App. 5th Cir. 9/14/94), 643 So.2d 1289; State v. Procell, 626 So.2d 954 (La. App. 3rd Cir.1993); State v. McSweeney, 619 So.2d 861 (La.App. 3rd Cir.1993); State v. Sumlin, 605 So.2d 608 (La.App. 2nd Cir. 1992).

ERROR PATENT REVIEW
La.C.Cr.P. art. 920 provides: "[t]he following matters and no others shall be considered on appeal: (1) An error designated in the assignments of error; and (2) An error that is discoverable by a mere inspection of the evidence."
For the purposes of an error patent review the "record" in a criminal case includes the caption, the time and place of holding court, the indictment or information, the mentioning of the impaneling of the jury, the verdict and the judgment of sentence. See State v. Oliveaux, 312 So.2d 337 (La. 1975) and State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990).
Upon review, we find that the trial court erred in sentencing defendant immediately upon denying his motion for new trial, without waiver by defendant of the statutory twenty-four hour delay. La.C.Cr.P. art. 873 provides:
If a defendant is convicted of a felony, at least three days shall elapse between conviction and sentence. If a motion for a new trial, or in arrest of judgment, is filed, a sentence shall not be imposed until at least twenty-four hours after the motion is overruled. If the defendant expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately.
This court has held that an error in sentencing a defendant without a twenty-four hour delay was harmless where defendant neither complained of the sentence nor claimed to have been prejudiced by the mistake. State v. Wise, 616 So.2d 219 (La.App. 5th Cir.1993). Such is the case here. Defendant neither objected to the sentence nor claimed prejudice. The imposed sentence was mandatory. This error is harmless.
*1273 Accordingly, we affirm the conviction of defendant on the charge of second degree murder and amend the sentence imposed to provide defendant with credit for time served. As amended, we affirm the sentence of life imprisonment at hard labor without benefit of parole, probation and or suspension of sentence and credit for time served. We remand the case to the trial court to notify defendant and add record evidence that defendant has been provided the notice mandated by La.C.Cr.P. art. 930.8.
CONVICTION AFFIRMED; SENTENCE AMENDED AND AS AMENDED, AFFIRMED; CASE REMANDED.