| JAMES L. CANNELLA, Judge.
The Defendant, Raymond Walker, appeals from his conviction of distribution of cocaine and his enhanced sentence, as a third felony offender, of 22 years imprisonment at hard labor. For the reasons which follow, we affirm.
On December 14, 2001, the Jefferson Parish District Attorney filed a bill of information charging the Defendant with distribution of cocaine, in violation of La. R.S. 40:967(A), which allegedly occurred on or about December 7, 2001.[1] The Defendant was arraigned on December 17, 2001 and pled not guilty. On March 19, 2002, the case was tried before a 12 person jury.
At trial, Sergeant Claude Koenig, also known as “C.J.,” a State witness, testified that he had been employed by the Gretna Police Department for 17 years and that he had been assigned to the narcotics division for the past seven or eight years.[2] He testified that the Gretna Police Department belonged to a municipal task *620 force consisting of the police departments of the cities of Harahan, Grand Isle, Ken-ner, and Westwego. The task force decided to conduct a “cop-in-the-box” _Jjinvestigation, whose purpose was to make narcotics arrests in known drug trafficking areas. Sergeant Koenig procured a van and installed a video and audio surveillance system to use in the investigation. On December 7, 2001, they began the investigation at approximately 5:00 p.m. in Gretna. At approximately 6:21 p.m., Detective Bennie Bazley, an undercover agent and the driver of the van, drove to the area of Le Boeuf and Kepler Streets, where there was a grocery store. He met with a black male subject, later identified as the Defendant, who sold him one rock of crack cocaine.
At that time, Sergeant Koenig was in the rear of the van along with six others, the arrest team. A television monitor was also in the back of the van. After the drug purchase was complete, Sergeant Koenig instructed the arrest team to arrest the Defendant outside by the window of the van, which they did. Detective Bazley advised the arrest team that, prior to the transaction, the Defendant had walked over to a black female with red hair, later identified as Brown. She removed an object from her bra area and gave it to the Defendant, who, in turn, brought the object back to him. Sergeant Koenig exited the van, and he and the arrest team also arrested Brown. Officer Koenig asked-Brown whether she had any more crack cocaine in her possession and she answered that she had given the Defendant her last piece. Sergeant Koenig testified that he knew the Defendant “from the street,” and that he did not tell the Defendant to buy crack cocaine from Brown and sell it to the undercover agent. He further testified that the Defendant was not working for him that night.
Detective Bazley, a State witness, testified that he had been employed by the Kenner Police Department for five years and that he worked in narcotics. He testified that, on December 7, 2001, he was involved in a narcotics investigation known as “cop-in-the-box.” Detective Bazley explained that the investigation involved going to areas known for drug trafficking and attempting to buy narcotics |4from street level dealers. Detective Bazley, who was the driver of the van, drove to a corner grocery store next to a donut shop. There were two or three people standing on the corner. Detective Bazley rolled down his window, yelled to a man, later identified as the Defendant, and asked him whether he had any marijuana or anything to smoke.
The Defendant walked up to the side of the van and said he did not have marijuana, but that he could take the detective to Holmes Boulevard where he could buy some. Detective Bazley asked the Defendant what he had, and the Defendant asked the detective what he was looking for. Detective Bazley asked the Defendant if he had any crack cocaine, and that he wanted to get “a twenty” from him, which he explained was a street term for twenty dollars worth of crack cocaine. The Defendant walked over to the corner by the store, to a female, later identified as Brown, retrieved something from her, walked back to the window of the van, and handed him a small, off-white rock-like object. Detective Bazley gave him twenty dollars in return. Detective Bazley identified State’s Exhibit 2 as the crack cocaine which he had purchased from the Defendant. He identified State’s Exhibit 3 as a videotape of the transaction. The videotape was played for the jury.
The State and the Defense stipulated that, if Daniel Waguespack, an expert in forensic science, were called as a witness, *621 he would testify that he analyzed an off-white, rock-like substance, State’s Exhibit 2, and that it tested positive for cocaine.
The Defendant testified that he had previously informed patrolling officers, including Sergeant Koenig, about the drug activity in the area. The Defendant testified that, on December 7, 2001, he got to the corner of Kepler and Le Boeuf Streets at approximately 4:30 p.m. When the van pulled up, he thought the driver might be a police officer, because the van had its lights on and the engine was | ¡¿running, and because he had heard there were “sweeps” being conducted. However, he thought that the driver might not be a police officer because he did not recognize him. The driver asked the Defendant if he had any “weed.” The Defendant knew then that the driver was not a regular and that something was wrong. He told the driver he could buy marijuana near the Oakwood Mall on Holmes Boulevard and that he would take him there. When the driver then said that he wanted crack cocaine, the Defendant thought the driver was targeting Brown, because she was the only person who had been engaging in drug transactions for the previous 20 minutes on the street corner.
The Defendant walked over to Brown and told her to go the van. He did so because he wanted the police to catch her selling drugs. Brown did not want to go, because she was afraid that the driver might be a police officer. Therefore, the Defendant took the drugs from Brown and gave them to the driver of the van. The Defendant testified that the driver of the van started to hand him a twenty-dollar bill, but before the Defendant could take it, officers came from the back of the van and attacked him. He said that the twenty dollar bill fell to the ground. The Defendant claimed that people in the neighborhood thought he was a police officer because of the way he conducted himself, and because his sister was a police officer in New Orleans. The Defendant thought that the police would let him go in this case. He testified that he had seen Sergeant Koenig let other suspects go in the past, even though the suspects had drugs in their possession, because Sergeant Koe-nig had gotten the suspect, Brown, whom he wanted.
The Defendant claimed that he had been giving Sergeant Koenig, Officer Scott, and other officers information regarding drug activity for approximately one and a half years. He stated that he talked to Sergeant Koenig approximately seven or eight times during the previous year and a half, and he did not know why Sergeant Koenig testified that he did not remember those conversations. The |fiDefendant testified that he never officially signed up to work for the officers, nor had he ever worked undercover for them or been paid for his services. The Defendant stated that he did not give information to the officers for money or to “work off charges.” The Defendant felt that he had to do something about the “deplorable” drug problem in his girlfriend’s neighborhood. His intent on December 7, 2001 was not to sell drugs, but to lure Brown, the person that he thought the police wanted, to the van.
The jury found the Defendant guilty as charged. The trial court denied the Defendant’s motion for a new trial on April 10, 2002. On that same date, the Defendant waived sentencing delays and the trial court sentenced the Defendant to imprisonment at hard labor for 15 years without benefit of parole, probation, or suspension of sentence. The Defendant’s oral motion to reconsider sentence was denied. The Defendant orally moved for an appeal. On April 11, 2002, the Defendant filed a written motion for appeal that *622 was granted.[3] The State filed a habitual offender bill of information on May 15, 2002, alleging the Defendant to be a third felony offender. On June 13, 2002, the Defendant stipulated to the habitual offender bill of information. The trial court found the Defendant to be a third felony offender, vacated the original sentence, and sentenced the Defendant to imprisonment at hard labor for 22 years. It is from this conviction and sentence that the Defendant appeals.
On appeal, the Defendant assigns one error. He argues that the trial court erred in overruling the defense objections to improper remarks made by the prosecutor in the presence of the jury while questioning the Defendant and in failing to grant a mistrial. The Defendant contends that the prosecutor gave his |7personal opinion regarding the Defendant’s credibility before asking the Defendant the first question on cross-examination, asked the Defendant how many convictions he had, even though the Defendant had not denied any of them, and asked the Defendant why he had not called Officer Scott as a witness. The Defendant claims that these remarks prejudiced him and that he was denied a fair trial.
The Defendant first argues that the trial court erred by failing to sustain his objection to remarks that the prosecutor made when he first started questioning him. The Defendant argues that the prosecutor made a prejudicial remark concerning the Defendant’s credibility such that he was denied a fail' trial. The testimony at issue is as follows:
MR. OUBRE: (The prosecutor)
It’s really a shame, Raymond, because you appear to be a smart man, and this ís a — and for you to sit and think that you, in front of this Jury, to think that you were a law enforcement officer, while your sister sits here wearing a uniform, is a disgrace. How many convictions you got [sic]?
MS. DAPONTE: (Defense counsel)
Objection, Judge. I — I’m going to object to that, Your Honor, that’s argumentative and it’s improper.
MR. OUBRE:
Mr. Walker, how many convictions do you have?
MS. DAPONTE:
Judge,..
THE COURT:
Alright, excuse me.
I’ll overrule your objection.
MR. OUBRE:
How many convictions do you have, Raymond?
RMS. DAPONTE:
Your Honor, that’s an improper question. I object. Mr. Walker has not denied any convictions. If Mr..
MR. OUBRE:
It’s a direct question.
MS. DAPONTE:
If Mr. Oubre has convictions that he knows about, that Mr. Walker did not mention, he can certainly ask about those. But Mr. Walker has not denied having criminal convictions.
MR. OUBRE:
How many convictions do you have?
THE COURT:
I’ll allow the question to stand.
*623 In his argument on appeal, the Defendant refers to Ms entitlement to a mistrial as a result of these remarks. However, what he is arguing is that he is entitled to a reversal of his conviction as a result of this trial error that resulted in such prejudice to the Defendant that he was denied a fair trial. The State responds that, because the Defendant failed to move for a mistrial following the question regarding the Defendant’s convictions, the issue was not preserved for appellate review.
The State is correct that the question of whether the trial court erred in not granting a mistrial as a result of the remarks was not preserved for appellate review, where a mistrial was not timely requested by defense counsel at trial. However, the objection to the trial court ruling was preserved for review.
Under La. C.E. art. 609.1, the State is allowed to ask the Defendant how many convictions he has. Therefore, we find that the trial court correctly overruled defense counsel’s objection regarding the question pertaining to the number of convictions.
3 Further, considering the overwhelming evidence of the Defendant’s guilt, we find that the verdict rendered in this matter was surely unattributable to the erroneous admission of any inappropriate comments by the prosecutor. We find that any error in the trial court’s ruling on these remarks by the State was certainly harmless.
Upon review, while we agree that the prosecutor was walking very close to the line of improper remarks, we do not find that a reversal of the conviction is warranted based on this remark.
The Defendant next argues that the trial court erred in failing to grant a mistrial under La.C.Cr.P. arts. 771 and 775 after the State asked the Defendant why he did not call Officer Scott as a witness.
During cross examination, the State asked the Defendant why he did not call Officer Scott as a witness to support his defense that he was soliciting the drugs for the police. Defense counsel objected and moved for a mistrial, arguing that the Defendant was not required to call any witnesses. The trial judge denied the motion for a mistrial but agreed to and did admonish the jury. The trial judge told the jury that there had been some confusion as to witnesses and that the jury was to disregard the State’s question. He further stated that the defense did not need to do anything and that whether or not a witness was called was of absolutely no consequence. Defense counsel thanked the trial judge for the admonition to the jury and did not request a mistrial.
The State contends that the Defendant has not demonstrated that he was prejudiced by the remark or that the error was not cured by the immediate admonition to the jury.
La.C.Cr.P. art. 770 states:
Upon motion of a the defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by Imthe judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
(3) The failure of the defendant to testify in his own defense; or
*624 (4)The refusal of the judge to direct a verdict.
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be giveri, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
La C.Cr.P. art. 770 is not applicable in this case, because the comment at issue is not within the scope of that article. The comment at issue herein falls under La.C.Cr.P. art. 771, which states as follows:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
LA.C.Cr.P. art. 775 provides as follows:
A mistrial may be ordered, and in a jury case the jury dismissed, when:
(1) The defendant consents thereto;
In(2) The jury is unable to agree upon a verdict;
(3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;
(4) The court finds that the defendant does not have the mental capacity to proceed;
(5) It is physically impossible to proceed with the trial in conformity with law; or
(6) False statements of a juror on voir dire prevent a fair trial.
Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.
A mistrial shall be ordered, and in a jury case the jury dismissed, when the state and the defendant jointly move for a mistrial.
Mistrial is a drastic remedy and, except in instances in which mistrial is mandatory, it is warranted only when trial error results in substantial prejudice to the defendant, depriving him of a reasonable expectation of a fair trial. State v. Forrest, 95-31 (La.App. 5th Cir.2/14/96), 670 So.2d 1263, writ denied, 96-0654 (La.6/28/96), 675 So.2d 1117. Whether a mistrial should be granted is within the sound discretion of the trial court, and denial of a motion for mistrial will not be disturbed on appeal absent an abuse of that discretion. State v. Brown, 96-1002 (La.App. 5th Cir.4/9/97), 694 So.2d 435, writ denied, 97-1310 (La.10/31/97), 703 So.2d 19.
The trial judge determined that an admonition to the jury was sufficient to rectify any adverse effects from the question *625 posed to the Defendant by the State. Defense counsel thanked the trial judge for the admonition and did not renew her request for a mistrial. We find no error, under the facts presented, in the trial court’s determination that an admonition was sufficient to rectify any problem that might have been created by the State’s comment. This assignment of error is without merit.

TERROR PATENT DISCUSSION

The record was reviewed for errors patent, according to La.C.Cr.P. art. 920, State v. Oliveaux, 312 So.2d 337 (La.1975), and State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990). The review reveals no errors.
Accordingly, we affirm the Defendant’s conviction for distribution of cocaine and his enhanced sentence, as a third felony offender, to 22 years imprisonment at hard labor.
AFFIRMED.

. Millie V. Brown (Brown) was also charged. However, this appeal pertains solely to Raymond Walker.

. Sergeant Koenig was referred to in the transcript variously as detective, officer, and sergeant. In this opinion, he will be referred to as "sergeant.''

. The Defendant’s motion for appeal was premature when it was filed after conviction and sentence, but before imposition of his enhanced habitual offender sentence. That procedural defect was cured, by the subsequent resentencing. State v. Balser, 96-443 (La.App. 5th Cir.11/14/96), 694 So.2d 351.