487 So.2d 488 (1986)
STATE of Louisiana
v.
Margie BRAGGS.
No. CR 85-851.
Court of Appeal of Louisiana, Third Circuit.
March 5, 1986.
*489 Andrew S. Vallien, Natchitoches, for defendant-appellant.
Mike Henry, Dist. Atty., Natchitoches, for plaintiff-appellee.
Before DOMENGEAUX, FORET and KING, JJ.
DOMENGEAUX, Judge.
The defendant, Margie Braggs, was charged by a grand jury indictment with second degree murder, a violation of La. R.S. 14:30.1. The defendant, accompanied by counsel, was arraigned and pleaded not guilty by reason of insanity. After a sanity hearing, both doctors found the defendant capable of understanding the criminal proceedings and able to assist her counsel in her defense. On May 8, 1985, the defendant waived her right to jury trial and proceeded to trial. The trial court found the defendant guilty as charged and sentenced her to the mandatory term of life imprisonment.

FACTS
In the early morning hours of September 26, 1984, Maybeline Coutee, the victim, was visiting Elnora Browder, who lived in Campti, La. Sharon Smith, Miss Browder's cousin, was also present at the residence. Shortly after midnight, Charles Ray Carter and Andrew "Brown-Boy" Jackson came to visit at Miss Browder's residence.
At trial, Miss Browder testified that she, Carter and Smith were seated at the kitchen table, while Jackson (defendant's "common-law husband") and the victim were seated on the couch. The defendant came to the Browder residence, and Miss Browder told the defendant she did not want any trouble: the defendant told her there would be no trouble. The defendant then saw Jackson and the victim on the couch and had a few words with them. The victim then told the defendant that she and Jackson did not have a sexual relationship.
After this encounter, the defendant, Jackson and Carter walked out the door. Carter then came back in to get his cigarettes, and the defendant followed a few seconds later with her hand behind her back. The defendant then pulled a gun from behind her back whereupon it misfired and after some technical adjustments she pointed it and fired it into the wall. The victim then tried to jump up from the table, but a chair was in her way and the defendant fired again, hitting the table. The victim, now begging for her life, ducked under the table, but the defendant flipped the table over and kept shooting at the victim. The defendant shot the victim twice, causing her to fall to the floor.
The victim died at the scene and was examined by Dr. Charles E. Cook, Natchitoches Parish Coroner, who testified that the victim died from shock caused by loss of blood resulting from a bullet wound to the lower left chest.

ASSIGNMENT OF ERROR NO. 1
The defendant contends that the trial court erred in that it denied defendant's motion to continue her trial on the ground that she was not mentally capable to proceed with trial.
Specifically, the defendant alleges that one of the doctors that comprised the sanity commission which examined her, found her to be in need of psychological evaluation. The defendant further adds that the Natchitoches Mental Health Clinic found the defendant to be severely disturbed.
*490 Article 641 of the Louisiana Code of Criminal Procedure states:
"Mental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense."
Louisiana jurisprudence presumes the defendant's sanity. La.R.S. 15:432; State v. Bennett, 345 So.2d 1129 (La.1977). The defendant must prove the defense of insanity by a preponderance of the evidence. State v. Thompson, 429 So.2d 862 (La. 1983). In State v. Brogdon, 426 So.2d 158 (La.1983), the Louisiana Supreme Court examined the requirements of the insanity defense and stated:
"In terms of capacity to proceed, the defendant must presently lack the capacity to understand the nature of the proceedings against him or to assist in his defense. The incapacity must result from a mental disease or defect. La.C. Cr.P. art. 641; cf. State v. Bennett, 345 So.2d 1129 (La.1977). The determinations of the trial judge in such matters are entitled to great weight on appellate review and will not be overturned absent an abuse of discretion. State v. Rochon, 393 So.2d 1224 (La.1981); State v. Jones, 376 So.2d 125 (La.1979); State v. Hamilton, 373 So.2d 179 (La.1979)."
In the present case, the defendant entered a plea of not guilty by reason of insanity and applied for an appointment of a sanity commission. Dr. R. Sills and Dr. Charles E. Cook were appointed as a sanity commission for the defendant, and they both subsequently found the defendant capable of understanding the nature of the proceedings against her. The two doctors also found the defendant capable of assisting her counsel in the defense of her case. Furthermore, Dr. Mary-Jo Fitz-Gerald of the Natchitoches Mental Health Clinic examined the defendant and reported that she understood the criminal proceedings which were pending and she did have the mental capacity to assist her defense counsel. Doctor Fitz-Gerald also reported that the defendant had the mental capacity to understand her actions at the time of the offense.
In addition, the defendant has not introduced any evidence to contradict these evaluations. Instead the defendant relies on the reports of the sanity commission. Specifically, the defendant argues that the Natchitoches Mental Health Clinic found the defendant to be severely disturbed, had a confused thought process and to suffer from moderate to severe depression. However this same report stated that the defendant understood the nature of the criminal proceedings and was also capable of assisting her counsel in defense.
In viewing this evidence, it is therefore apparent that the defendant has not proved by a preponderance of the evidence that as a result of any defect, the defendant lacks the capacity to understand the nature of the proceedings or to assist in her defense. In addition, great weight is given to a trial court's determination of a defendant's mental capacity. State v. Brogdon, supra. Thus, considering the State's evidence concerning defendant's mental capacity and the lack of evidence put forth by the defendant, it is apparent that the trial court did not abuse its discretion in finding the defendant competent to proceed to trial.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
The defendant contends the trial court erred in denying the defendant's motion for change of venue because of the publicity at the time of her arrest and again just two days before her trial date.
Specifically, the defendant contends that a newspaper article published on page 2 of the May 25, 1985 edition of the Natchitoches Times entitled: "Pecan Park Murder Trial Begins Wednesday Here" was published solely to inflame the people of the subdivision of Pecan Park in Campti.
Article 622 of the Louisiana Code of Criminal Procedure states:
"A change of venue shall be granted when the applicant proves that by reason *491 of prejudice existing in the public mind or because of undue influence, or that for any other reason, a fair and impartial trial cannot be obtained in the parish where the prosecution is pending.
In deciding whether to grant a change of venue the court shall consider whether the prejudice, the influence, or the other reasons are such that they will affect the answers of jurors on the voir dire examination or the testimony of witnesses at the trial."
In State v. Giovanni, 409 So.2d 593 (La. 1982), the Louisiana Supreme Court examined Louisiana Code of Criminal Procedure Article 622. In Giovanni the court stated:
"Grounds for a motion to change venue are provided in La.C.Cr.P. art. 622. Under this article the defendant must prove more than mere knowledge of public facts surrounding the offense to be entitled to have his trial moved to another parish. The burden of proof is on the defendant to show that there exists such prejudice in the collective mind of the community that a fair trial is impossible. State v. Adams, 394 So.2d 1204 (La. 1981); State v. Felde, 382 So.2d 1384 (La.1980); State v. Sonnier, 379 So.2d 1336 (La.1979), on rehearing, 379 So.2d 1368 (La.1980); State v. Matthews, 354 So.2d 552 (La.1978); State v. Sheppard, 350 So.2d 615 (La.1977). It is well established that whether the defendant has made the requisite showing is a question addressed to the trial court's sound discretion."
In the present case, the defendant waived a trial by jury and elected a bench trial. Just prior to trial, at the hearing on the motion for change of venue, the defendant claimed that this newspaper article was published solely to inflame and reactivate the hurt and injury to the people of Pecan Park. The defendant further argues that this created a large turnout in the courtroom which was distractive to the court to the point that the defendant did not receive a fair trial.
To begin with, the newspaper article entered into evidence by defendant is only a brief factual summary which does not appear to be prejudicial. However, by failing to present any of the evidence of prejudice or undue influence, the defendant did not prove anything more than mere public knowledge of the facts. Instead, the defendant reasons only that a crowded courtroom would distract the judge. In viewing this evidence, it appears that defendant did not prove by a preponderance such existing prejudice on the part of the community as to prevent a fair trial. Consequently, the denial of defendant's motion for a new trial was within the sound discretion of the trial court.

ASSIGNMENT OF ERROR NO. 3
The defendant contends the trial court erred in that the judge found the defendant guilty of second degree murder when the evidence did not support that conviction.
Specifically, the defendant argues that she did not have the specific intent to kill or inflict great bodily harm upon the victim and therefore, should have been found guilty only of manslaughter.
The standard of review as to the sufficiency of the evidence is whether viewing the evidence in a light most favorable to the prosecution, any rational trier of fact would have concluded beyond a reasonable doubt proof of each element of the crime. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)[1]; State v. Captville, 448 So.2d 676 (La.1984).
In the present case, the defendant was convicted of the crime of second degree murder, a violation of La.R.S. 14:30.1 which states:
*492 "Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm."
At trial, Elnora Ann Browder, an eyewitness to the shooting and resident of the house where it occurred, testified that in the early morning hours of September 26, 1984, the victim, Maybeline Coutee was visiting at her house. Shortly after midnight, Charles Ray Carter and Andrew "Brown-Boy" Jackson, the defendant's "commonlaw" husband, came to visit. Sharon Smith, a cousin of Miss Browder, was also present at the shooting. Miss Browder testified that she, Charles Carter, and Sharon Smith were seated at the kitchen table while the victim and "Brown-Boy" Jackson were sitting together on the couch. Miss Browder then added that the victim and Jackson were just talking. Miss Browder then testified she heard a knock on the door and went to look through the keyhole but did not see anybody. Next she partially opened the door and saw the defendant who pushed the door open. Miss Browder grabbed the defendant by the arm and told her that she did not want any trouble in the house. The defendant then assured Miss Browder there would be no trouble. The defendant then saw Jackson (her "commonlaw husband") and the victim on the couch and had a few words with them. Miss Browder testified that at that point, she asked Jackson to leave so there would not be any trouble in her house. The victim then told Jackson to tell the defendant that they did not have a sexual relationship.
After this encounter, the defendant, Jackson, and Charles Carter walked out the door. Next, Charles Carter came back to the door and Sharon Smith answered. Carter then said he came back to get his cigarettes and subsequently came over to the table and picked them up. A few seconds later, the defendant walked in with her hand behind her back, went over to the table and pulled a gun out from behind her back.
The gun "snapped" and the defendant recocked it and shot into the wall. The victim then tried to jump up from the table, but a chair was in her way. The defendant then fired again and hit the table. The victim ducked under the table and begged the defendant several times not to shoot, but the defendant flipped the table and kept shooting. The defendant hit the victim once and she fell down and then the defendant shot her again and she fell to the floor.
Sharon Smith, a cousin of Elnora Browder who was also present at the shooting, testified that she was sitting at the table with her cousin and Charles Carter when the defendant came over to the couch and started asking Jackson why he had his arm around the victim. Miss Smith then testified that Elnora Browder asked the defendant to leave. The defendant replied that she was not going anywhere without "Brown-Boy" Jackson. Miss Browder then asked both the defendant and Jackson to get out of the house. The defendant and Jackson then subsequently left the house. According to Miss Smith, Charles Ray Carter had knocked on the door and said he forgot something. The defendant then walked in behind Carter with her hand behind her back. Next, the defendant pulled the gun out, and everyone left the table area except the victim who was trapped in the far corner. The defendant then "snapped" the gun and it shot into the wall. The victim then asked the defendant not to shoot her and stated that she did not want "Brown-Boy". The defendant then shot again and the victim ducked up under the table. The defendant then flipped the table over and shot the victim.
The testimony of Andrew "Brown-Boy" Jackson and Charles Ray Carter, two of *493 the eyewitnesses corroborates that of Elnora Browder and Sharon Smith.
Dr. Charles E. Cook, the Natchitoches Parish Coroner, testified that on September 26, 1984, he was called to the scene of a homicide at 120 Larry Drive in Campti, La. Doctor Cook, who examined the victim, testified that the cause of death was shock caused by loss of blood resulting from a bullet wound to the lower portion of her left chest.
At trial, the defendant testified that the prosecution witness' version was correct. However, the defendant claims she does not know why she shot the victim, only that she was very angry at the time. Therefore, the defendant contends that the State did not prove that she had the specific intent to kill or inflict great bodily harm upon the victim.
Specific intent is defined by La.R.S. 14:10(1), which states in part:
"Criminal intent may be specific or general:
(1) Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act."
In State v. Boyer, 406 So.2d 143 (La. 1981), the Louisiana Supreme Court stated that specific intent is a state of mind and need not be proven as fact, but may be inferred from the circumstances of the transaction and actions of the defendant.
In the present case, there were several eyewitnesses who saw the defendant argue with "Brown-Boy" Jackson, walk out the door, come back in, pull out a pistol and shoot the victim. It can be inferred from the fact that the defendant fired several shots at the trapped victim from very close range that she had the requisite specific intent to either kill or inflict great bodily harm upon the victim. State v. Neslo, 433 So.2d 73, 88 (La.1983).
Thus, viewing this evidence in a light most favorable to the prosecution any rational trier of fact could have concluded that the defendant after having found her "common-law husband" together with the victim, re-entered Miss Browder's residence armed with a concealed pistol which she pulled out from behind her back and shot Maybeline Coutee in the lower chest causing her death. It can also be inferred from the evidence that the defendant had the specific intent to kill or inflict great bodily harm upon Maybeline Coutee and therefore committed the crime of second degree murder. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 4
Through this assignment, the defendant designates the entire record for consideration.
As per Court policy, pursuant to La.C. Cr.P. Art. 920(2), this Court closely examines the pleadings and proceedings for errors. Accordingly, we have conducted a careful examination of the record before us and have found no errors.
For the above and foregoing reasons the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Although reviewing courts are obligated to follow the Jackson standard as mandated by the Louisiana Supreme Court, the author of this opinion has expressed opposition to this standard because it relegates the reviewing power of the appellate courts to nothing more than "second guessing" the triers of fact. See my concurring and dissenting opinions in State v. Gatson, 434 So.2d 1315 (La.App. 3rd Cir.1983); State v. Anderson, 440 So.2d 205 (La.App. 3rd Cir.1983); and State v. Bryan, 454 So.2d 1297 (La.App. 3rd Cir.1984), writ denied, 458 So.2d 128 (La.1984).