508 So.2d 191 (1987)
STATE of Louisiana, Plaintiff-Appellee,
v.
Edrick JENKINS, Defendant-Appellant.
No. CR86-307.
Court of Appeal of Louisiana, Third Circuit.
May 13, 1987.
*192 Kathrine S. Williamson, Alexandria, for defendant-appellant.
Dan B. Cornett, Dist. Atty., Donald R. Wilson, Asst. Dist. Atty., Jena, for plaintiff-appellee.
Before STOKER, LABORDE and YELVERTON, JJ.
STOKER, Judge.
Edrick K. Jenkins appeals his convictions of armed robbery and aggravated burglary, and his sentences for those crimes.

FACTS
On December 4, 1983 the LaSalle Parish residence of Dr. I.C. Turnley was burglarized while the Turnleys were away at church. Dr. Turnley returned home unexpectedly and found the two burglars in the house. The burglars were armed with shotguns; they ordered Turnley to the floor, and one of them fired a shot over his head as he was attempting to comply. They blindfolded Dr. Turnley and tied him to a chair. They took several items from the person of Dr. Turnley as well as a large number of guns and pieces of jewelry from the house.
Eventually, the appellant and Johnny Ray Smith were arrested for the crime. Smith confessed, and related to police that he and Edrick Jenkins had committed the robbery and had taken the loot to Houston to sell.
Jenkins was indicted on charges of armed robbery and aggravated burglary, violations of LSA-R.S. 14:64 and 14:60. He moved for a change of venue and to suppress the testimony of his accomplice, Johnny Ray Smith, who was a witness for the State. Both motions were denied by the court. The jury found Jenkins guilty as to both charges. He was sentenced to forty-five years on the robbery count and fifteen years on the burglary count to run consecutively. Jenkins appeals, citing several errors.

CHANGE OF VENUE
The appellant claims the trial court erred in denying his Motion for Change of Venue and Supplemental Motion for Change of Venue. He argues that it was impossible for him to get an impartial trial because the victim was well known in the community, and in such a rural community the incident giving rise to this case would not be easily forgotten.
A change of venue shall be granted when the applicant proves that by reason of prejudice existing in the public mind or because of undue influence, or that for any other reason, a fair and impartial trial cannot be obtained in the parish where the *193 prosecution is pending. In deciding whether to grant a change of venue the court shall consider whether the prejudice, the influence, or other reasons are such that they will affect the answers of jurors on the voir dire examination or the testimony of witnesses at the trial. LSA-C.Cr.P. art. 622. Under this article the defendant must prove more than the mere knowledge of public facts surrounding the offense to be entitled to have his trial moved to another parish. The burden of proof is on the defendant to show that there exists such prejudice in the collective mind of the community that a fair trial is impossible. It is well established that whether the defendant has made the requisite showing is a question addressed to the trial court's sound discretion. State v. Giovanni, 409 So.2d 593 (La.1982); State v. Braggs, 487 So.2d 488 (La.App.3d Cir.1986).
In State v. Bell, 315 So.2d 307 (La.1975), the Supreme Court set forth the following factors as being relevant in determining whether to change venue:
"(1) [T]he nature of pretrial publicity and the particular degree to which it has circulated in the community, (2) the connection of government officials with the release of the publicity, (3) the length of time between the dissemination of the publicity and the trial, (4) the severity and notoriety of the offense, (5) the area from which the jury is to be drawn, (6) other events occurring in the community which either affect or reflect the attitude of the community or individual jurors toward the defendant, and (7) any factors likely to affect the candor and veracity of the prospective jurors on voir dire." 315 So.2d at 311.
Six articles were published in the Jena Times over a five-month period reporting the robbery and the arrests and prosecutions of the suspects. The articles are brief, factual and objective. The last story was published approximately fourteen months before this trial. There is nothing in the articles themselves which might incite any prejudice against the defendant.
Counsel for the appellant concedes that it is not the nature of the publicity that caused the prejudice, but rather the reputation of the victim. Dr. Turnley has practiced medicine in Jena since 1958, and is one of only thirteen doctors practicing in LaSalle Parish. He has served as the coroner of that parish since 1960. He is undisputedly well known and respected by a large segment of the community. However, the appellant has not shown that there was such a collective prejudice in the community that it would deprive a defendant of a fair and impartial trial. The prospective jurors were questioned thoroughly during voir dire concerning their association with Dr. Turnley. The record reveals no hostility resulting from the robbery. In fact, the answers of the veniremen indicate nothing more than mere public knowledge of the facts, which is insufficient basis for a change of venue. State v. Braggs, supra.
We find no abuse by the trial judge in denying a change of venue.

CONFESSION OF JOHNNY RAY SMITH
Jenkins cites as error the denial of his motion to suppress the testimony of Johnny Ray Smith.
Smith was arrested in connection with the robbery and burglary of the Turnleys. After his arrest, Smith gave a statement to the LaSalle Parish Sheriff's Office implicating Jenkins in the crime. Subsequent to making the statement, Smith pleaded guilty to the charges and received a sixty-year sentence. After entering the guilty plea, Smith allegedly gave a statement to defense counsel indicating that Jenkins was not involved in the crime. In the week prior to the appellant's trial, the district attorney's office contacted Smith's defense attorney and agreed to join with Smith's attorney in an attempt to reduce Smith's sentence from sixty to twenty years, if Smith would agree to testify at the appellant's trial if he was called. Upon learning of the agreement between Smith and the State, Jenkins moved to suppress Smith's testimony on the ground that it was illegally obtained.
*194 The appellant argues that the State's action constitute a violation of the public bribery statute, LSA-R.S. 14:118:
"Public bribery is the giving or offering to give, directly or indirectly, anything of apparent present or prospective value to any of the following persons, with the intent to influence his conduct in relation to his position, employment, or duty:
* * * * * *
"(4) Witness or person about to be called as a witness, upon a trial or other proceeding before any court, board, or officer authorized to hear evidence or to take testimony."
The appellant argues that the State's offer was something of value which was intended to influence Smith's conduct or duty as a witness. He contends that the testimony should have been excluded. The appellant admits that the district attorney is empowered to enter plea bargains with an accused. He apparently would not argue that a district attorney can offer leniency to an accused in exchange for testimony against a co-perpetrator, though this form of plea bargaining also would appear to be a violation of LSA-R.S. 14:118. The jurisprudence in Louisiana generally holds that an accomplice is competent to testify against a co-perpetrator even if the prosecution offers him inducements to testify; such inducements would merely affect the witness's credibility. State v. Gunter, 208 La. 694, 23 So.2d 305 (1945). The State argues that its offer to Smith was a valid exercise of prosecutorial discretion in resolving a writ of certiorari for a denied application for post-conviction relief filed by Smith. The State contends that there was a bona fide dispute as to the legality of Smith's prior guilty plea. The State analogizes its actions with Smith to a plea bargain situation with an accomplice to secure the accomplice's testimony against his co-perpetrator. Since inducements to testify have been approved by the courts, the State rationalizes that the offer to Smith would not be a violation of the public bribery statute. The fact that he was offered something to testify would only affect his credibility.
The trial judge stated that the defendant's appropriate avenue of relief was the cross-examination of Smith. We agree. The issue is not whether or not the district attorney's actions were illegal, but whether or not they rendered Smith incompetent to testify. Under LSA-R.S. 15:461 and 463, a competent witness is a person of proper understanding testifying as to facts within his knowledge. The fact that a witness may be more prone to be untruthful because of some inducement or other bias does not render him incompetent to testify. It is the duty of the cross-examiner to expose facts which would show that bias. It is the duty of the trier of fact to assess the witness's credibility in light of those damaging facts.
The terms of the agreement between Smith and the district attorney were disclosed to defense counsel in this case in advance of trial. Counsel had an opportunity to cross-examine Smith as to the details of the agreement and as to his alleged statement to her clearing Jenkins. For reasons of her own, she chose not to pursue the matters in greater depth.
We find no error by the trial judge in admitting the testimony of Johnny Ray Smith. Smith was a competent witness, and his credibility was a matter for the jury to determine.

CHALLENGES FOR CAUSE
Jenkins claims the trial court erred in denying his challenges for cause of six prospective jurors. The assignment of error as to one of the jurors was not briefed and is considered abandoned.
The challenges for cause were made on the following grounds, as provided in LSA-C.Cr.P. art. 797:
"(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;

*195 "(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;
"(4) The juror will not accept the law as given to him by the court...."
When an accused has exhausted all of his peremptory challenges before the completion of the jury panel, he is entitled to complain on appeal of a ruling refusing to maintain a challenge for cause. State v. Sylvester, 400 So.2d 640 (La.1981). In the instant case, defendant exhausted his peremptory challenges before completion of the jury panel. Thus, these assignments of error are properly before the court.
A trial judge has broad discretion in ruling on a challenge for cause, and his ruling will not be disturbed on appeal absent a showing of abuse of that discretion. State v. Smith, 437 So.2d 802 (La.1983); State v. Sugar, 408 So.2d 1329 (La.1982); State v. Jones, 474 So.2d 919 (La.1985). A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice, or inability to render judgment according to law may be reasonably implied. State v. Jones, supra.
Some of the challenged jurors knew Dr. Turnley. However, the record indicates that these acquaintances were casual, and would not influence their decisions. Others were familiar with deputies scheduled to testify in this case. Again, the record shows that the jurors were not particularly close to these officers, nor could they remember the content of any conversations with those officers concerning this incident. Association with law enforcement agencies or personnel will not alone disqualify a prospective juror. State v. Jones, supra. The record shows no error in the trial judge's conclusion that all of the jurors could remain impartial despite these relationships.
While several of the jurors felt that the fact that the defendant was arrested meant that there was evidence of his guilt, they did not appear to be predisposed to presume guilt. Their responses merely indicated an expectation that the State would produce evidence to support the charges. They clearly understood the presumption of innocence, and were confident of their abilities to hold the State to the applicable burden of proof.
Some of the jurors indicated that they would expect the defendant to present some evidence in his defense. These individuals were instructed that the defendant had a right to produce no evidence at all, and that his exercise of that right could not be considered a sign of guilt. After thorough questioning it was clear that all understood and accepted the law, and could apply it impartially to the evidence.
Under the circumstances, we find no abuse of the trial judge's discretion in denying the defendant's challenge for cause of these prospective jurors.

CURTAILMENT OF VOIR DIRE
The appellant contends that the trial court erred in curtailing the defense's voir dire of four prospective jurors.
In a criminal case, an accused is guaranteed the right of voir dire of prospective witnesses. La. Const. art. 1, Section 17. Part of the purpose of voir dire examination is to discover bases for challenges for cause and to secure information for intelligent exercise of peremptory challenges. State v. Williams, 457 So.2d 610 (La.1984). The accused's right to intelligently exercise cause and peremptory challenges may not be curtailed by the exclusion of nonrepetitious voir dire questions which reasonably explore the juror's potential prejudices, predispositions or misunderstandings relevant to the central issues of the case. However, a trial judge has the discretion to limit voir dire examination, as long as the limitation is not so restrictive as to deprive defense counsel of a reasonable opportunity to probe to determine a basis for challenges for cause and for the intelligent exercise of peremptory challenges. *196 State v. Duplessis, 457 So.2d 604 (La.1984).
The curtailment of the questioning of three of the prospective jurors occurred while they were being questioned as to their reactions to the failure of a defendant to call witnesses in his behalf. In all three cases, the jurors had answered the questions of defense counsel more than once. The questioning of the fourth juror was interrupted during a series of questions concerning her ability to set aside any previously formed opinions while considering the case. Again, defense counsel had posed the same question several times, and it had been answered.
Defense counsel was given a reasonable opportunity to probe the jurors' predispositions and to determine bases for challenges for cause. Once the questioning became repetitious, the trial judge correctly exercised his discretion in instructing her to move on to another point. These assignments of error are without merit.

PAWN TICKETS
The defendant appeals the admission into evidence of four items, namely, exhibits 20, 21, 22 and 25. These items have been referred to in his appellate brief as four pawn tickets. In fact, two are pawn tickets, one is a motel receipt and one is a handwriting exemplar. Since the appellant briefs only the issue of the pawn tickets, we consider the assignments of error concerning the motel receipt and the handwriting exemplar abandoned.
Two objections were made to the admission of the pawn tickets at trial: that an improper foundation was laid, and that they were hearsay. We find no merit to these objections.
In raising a hearsay objection to the pawn tickets, the defendant contended that they did not qualify under the business records exception, as no witness was called who had personal knowledge of the records. However, these records were signed by the defendant himself, and constitute admissions on his part. Our courts have recognized an exception to the hearsay rule for such admissions. State v. Lewis, 416 So.2d 921 (La.1982); State v. Walker, 344 So.2d 990 (La.1977).
In conjunction with the introduction of the pawn tickets, the State established that law enforcement officers had obtained the items from the pawn shops in Houston. A handwriting expert was called to compare the signatures on the exhibits to those on handwriting exemplars signed by the defendant after his arrest. The expert stated that he had reason to believe that the signatures were the same. Under LSA-R.S. 15:440.1, comparison of a disputed writing with any writing proved to the satisfaction of the judge to be genuine shall be permitted, and the writings and the comparison may be submitted to the court and jury as evidence of the genuineness of the writing in dispute. The proper foundation was laid for the admission of the pawn tickets.

EXCESSIVENESS OF SENTENCE
The appellant argues that the sentences on each count were excessive, and that there was no justification for the imposition of consecutive, rather than concurrent, sentences.
La. Const. Art. 1, Section 20 prohibits the imposition of excessive sentences. A sentence may be excessive, even though it is within the statutory limits, if it is nothing more than the needless infliction of pain and suffering on the defendant. State v. Sepulvado, 367 So.2d 762 (La. 1979). A sentence is considered excessive if it is so disproportionate to the crime as to shock one's sense of justice. The imposition of a sentence within the statutory limitations is within the discretion of the trial judge and should not be reversed absent a manifest abuse of that discretion. State v. Abercrumbia, 412 So.2d 1027 (La.1982).
As a general rule, terms of imprisonment imposed for convictions arising out of the same set of circumstances should be served concurrently unless the trial judge directs that they be served consecutively. LSA-C. Cr.P. art. 883. Sentences are not considered excessive simply because they are *197 imposed consecutively. Consecutive sentences are justified when the offender poses an unusual risk to the public safety. State v. Jett, 419 So.2d 844 (La.1982).
In the instant case, the appellant was convicted of armed robbery and aggravated burglary. The sentence for armed robbery is imprisonment for between five and ninety-nine years. LSA-R.S. 14:64. The sentence for aggravated burglary is imprisonment for between one and thirty years. LSA-R.S. 14:60. The appellant was sentenced to forty-five years on the robbery count, and fifteen years on the burglary count to run consecutively to the sentence for the robbery.
The sentences imposed were well within the statutory limits. The trial judge noted the following facts: the appellant's conduct threatened serious harm; there was no provocation or justification for his acts; he had a history of prior criminal activity and in fact had been released from prison just six months before this incident; compensation of the victim would not be a factor; further criminal conduct would likely take place if the appellant were not incarcerated; and incarceration would cause no undue hardship upon appellant. The trial judge felt the best way to protect society was to incarcerate the appellant. In reading the judge's reasons for sentencing, it cannot be said that the judge abused his discretion in imposing the sentences or in ordering them to run consecutively.

SPECIAL JURY CHARGES
The appellant contends that the trial court erred in not giving five of its requested special jury charges.
LSA-C.Cr.P. art. 807 states that a requested special charge need not be given if it is included in the general charge or in another special charge to be given.
The omitted charges concerned the necessity of the State to prove guilt beyond a reasonable doubt, the requirement that the jury avoid a decision based on sympathy, the consideration that may be given to the existence of an agreement between a witness and the State, the effect of finding that the defendant is an accessory after the fact, and an explanation that the jury is entitled to reject any testimony it considers false.
All of these charges were covered by the general instructions, except the one involving accessories after the fact. That instruction was not relevant in this case, and was properly omitted. We find no merit to this assignment of error.

CONCLUSION
For the foregoing reasons, the convictions and sentences of the defendant are affirmed.
AFFIRMED.