735 So.2d 723 (1999)
STATE of Louisiana, Appellee,
v.
Joseph Gene GREEN, Defendant-Appellant.
No. 98-1388.
Court of Appeal of Louisiana, Third Circuit.
March 31, 1999.
Rehearing Denied June 16, 1999.
*726 Charles F. Wagner, Dist. Atty., James M. Buck, for State of Louisiana.
John Michael Lawrence, New Orleans, for Joseph Gene Green.
Before: DOUCET, C.J., SAUNDERS, and SULLIVAN, JJ.
DOUCET, Chief Judge.
Defendant, Joseph Gene Green, was charged by bill of indictment with second degree murder, a violation of La.R.S. 14:30.1. He was tried before a twelve-person jury between March 10 and 14, 1998, and found guilty as charged. Thereafter, the court sentenced him to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. Defendant now appeals on the basis of sixteen assignments of error.

FACTS
This case involved the death of Rita Rablais on October 24, 1994, in Rapides Parish, Louisiana. An investigation of her death revealed that a number of individuals, including the Defendant, had been involved in the savage beating and death of Ms. Rablais.

ERRORS PATENT
In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by the court for errors patent on the face of the record. We note one error patent.
The Defendant was not informed of the three-year time limit for filing post-conviction relief as is required by La.Code Crim.P. art. 930.8. Thus, the district court is directed to inform the Defendant of the provisions of Article 930.8 by sending appropriate written notice to the Defendant within ten days of the rendition of this opinion and to file written proof that the Defendant received the notice in the record of the proceedings. See State v. Fontenot, 616 So.2d 1353 (La.App. 3 Cir.), writ denied, 623 So.2d 1334 (La.1993).

ASSIGNMENT OF ERROR NO. 1 & 13
By assignment of error number one, the Defendant argues that the trial court erred by not granting his Motion to Suppress Evidence. By assignment of error number thirteen, the Defendant contends that the trial court erred by not granting his Motion for a New Trial. The Defendant states that the issues in his Motion for a New Trial were the same issues as contained in assignment number one and he therefore incorporates the two assignments. The Defendant contends that the police did not comply with the requirements of State in the Interest of Dino, 359 So.2d 586 (La.1978). The State notes in its brief that State v. Fernandez, 96-2719 (La.4/14/98), 712 So.2d 485, overruled the Dino case. While the State is correct, we note that the charged offense happened on October 24, 1994. The Motion to Suppress was heard on June 19, 1995, and the trial was held on March 10-14, 1998. Thus, the murder and the trial thereof took place before the Dino case was overruled. However, after reviewing the case in accordance with the mandates of Dino, we find said mandates were met. Thus, this court need not resolve whether Fernandez should be applied retroactively, since the lesser standard of totality of the circumstances now required under Fernandez would likewise be met.
In Dino, the Supreme Court expanded the Miranda requirements when a juvenile is subjected to police interrogation. The Louisiana Supreme Court detailed the requirements for validly obtaining a statement from a juvenile as:
... the purported waiver by a juvenile must be adjudged ineffective upon the failure by the State to establish any of three prerequisites to waiver, viz., that the juvenile actually consulted with an attorney or an adult before waiver, that the attorney or adult consulted was interested in the welfare of the juvenile, or *727 that, if an adult other than an attorney was consulted, the adult was fully advised of the rights of the juvenile.
359 So.2d at 594.
In his brief, the Defendant specifically states that his statements were the product of improper police pressure and coercion; that his aunt was unable to retain an attorney for him because of her indigence; that his aunt did not understand his legal rights; and that he was not able to engage in meaningful consultation with his aunt about the waiver of his Miranda rights.
On June 19, 1995, a Motion to Suppress was held wherein the Defendant sought to suppress four statements he made to the police. The first statement the Defendant sought to suppress concerned a statement he made on November 23, 1994. Detective Weatherford testified that as part of their investigation, the police were talking to people in the area where the homicide occurred in an effort to obtain information. An officer spoke to the Defendant on November 23, 1994, but the Defendant did not give the officer any relevant information concerning the crime. The second statement the Defendant gave was on December 8, 1994. Detective Weatherford testified that their investigation led them to believe that the Defendant may have overheard a conversation or a description of what had taken place on Kelly Street. Detective Weatherford testified that on December 8, 1994:
A. He [Defendant] told us that he had in fact been engaged in a conversation between he and several others, [including] Frederick Gradley, [and] Cedric Howard, where Gradley had described going into a house, robbing an old woman and tying her up and putting her in a closet. Killing her also.
This conversation was recorded. Detective Weatherford testified that with regard to these two conversations, the Defendant was not a suspect. However, the following day, the Defendant became a suspect when Frederick Gradley confessed to the crime and named the Defendant as being involved. The Defendant was then taken into custody. Due to the fact that he was a juvenile (fifteen years old at the time), his aunt was called to the police station. Ms. Lowe testified that the Defendant had been living with her for approximately four years, that the Defendant's father had passed away, and that the Defendant's mother did not see her son on a regular basis. Prior to questioning the Defendant on December 9, 1994, Detective Weatherford testified that he read the Defendant and his aunt the Defendant's rights. Ms. Lowe acknowledged that she was present while the Defendant was read his rights, and that she understood those rights. Ms. Lowe further testified, "I told him to tell the truth. If he was in it to tell the truth and if he wasn't, he wasn't in it."
Detective Weatherford testified that on December 12, 1994, the Defendant requested to speak with the investigators. Prior to speaking to the Defendant, Ms. Lowe was requested to meet the investigators and to be present during the interview with the Defendant. The Defendant and Ms. Lowe were again advised of the Defendant's rights and they indicated that they understood.
In considering each of the Defendant's contentions, we observe that the Defendant states that his statements were the product of improper police pressure and coercion. However, the Defendant does not point to anything in the record to support his argument. Detective Weatherford testified that the officers did not force, threaten or coerce the Defendant during the December 9 or 12, 1994 interrogations. Detectives Billingsley and Green likewise testified that the Defendant was not forced, threatened or coerced to give his statements on December 9 or 12, 1994. With regard to the December 9, 1994 interrogation, Ms. Lowe testified at the Motion to Suppress that:
A. All five of `em. All five of `em talked to him.

*728 Q. All at the same time?
A. Same time.
Q. Was there a lot of confusion?
A. Well, you listen for five of `em screaming at you at the same time. Talking. Is it confused to you? Yeah.
Q. Okay.
A. You know, sometime that'll break `em. They must have been trying to break him, you know, or something or other. But all five of `em was talking to him at the same time.
With regard to the December 12, 1994 meeting with the Defendant, Ms. Lowe testified:
Q. Did you make any complaints about the police officers' interrogation?
A. No. They all ... four of `em went out and allowed Detective Jones to talk with him and me.
Based on the testimony in the record, we find the Defendant was not subjected to improper police pressure and coercion.
The Defendant further states in his brief that his aunt was unable to retain an attorney for him because of her indigence and that his aunt did not understand his legal rights. However, the record establishes that on two separate occasions the rights of the Defendant were read to him and his aunt. On each occasion, Ms. Lowe indicated that she understood those rights and she signed the rights form indicating her understanding.
Additionally, the Defendant states that he was not able to engage in meaningful consultation about the waiver of his Miranda rights with his aunt. This court has held that a private consultation is not a prerequisite to compliance with Dino. State v. Gachot, 609 So.2d 269, 274 (La. App. 3 Cir.1992); State v. Carter, 569 So.2d 1025 (La.App. 3 Cir.1990). Therefore, the failure of the police to allow Defendant to privately consult with his aunt is no basis for the suppression of Defendant's statements.
Finally, the Defendant argues that the police did not fully advise his aunt of his rights nor explain to her the consequences of his waiver. The record, however, fails to support this contention. Rather, it indicates that on two separate occasions, Ms. Lowe, along with the Defendant, were informed of his Miranda rights, and indicated that they understood those rights.
Accordingly, we find the requirements of Dino were met in this case. The Defendant's aunt, whom he had lived with for the previous four years, was with the Defendant during each custodial interrogation and advised him to tell the officers the truth. The Defendant's aunt was advised of the charge against him. The Defendant and his aunt were advised of the Defendant's rights and indicated that they understood those rights.
Therefore, the trial court did not err in denying the Defendant's Motion to Suppress.

ASSIGNMENT OF ERROR NO. 2
The Defendant expressly abandons assignment of error number two.

ASSIGNMENT OF ERROR NO. 3
By his third assignment of error, the Defendant contends that the trial court erred by not granting his written Motion to Quash or his oral Motion to Quash. In his written motion, the Defendant requested that the general jury venire be quashed because it was drawn solely from the voter registration rolls, and was thus illegally constituted, or in the alternative that he be granted a continuance. In response to this motion, the court granted the Defendant a continuance. Since the Defendant does not argue in brief the method of drawing the general jury venire, we find this issue has been abandoned. Prior to the jury being chosen, the Defendant made an oral motion to quash the general jury venire, arguing that eighty-three members of the venire did not show up. In brief, the Defendant argues that the jury was improperly drawn, selected and constituted because not all of the jurors who were *729 served subpoenas to be part of the general venire were present. Therefore, the Defendant argues that the remaining jurors composed an improperly constituted jury. In brief, the Defendant does not inform this court how many jurors were absent, but a review of the record reveals that eighty-three of the jurors that were called to be a part of the general jury venire were absent. The Defendant argues that the trial court violated La.Code of Crim.P. arts. 408 and 411 by not requiring these jurors to be present. La.Code of Crim.P. art. 408 deals with the selection of the general venire, and article 411 deals with the grand jury venire. Thus, these articles do not deal with absence of a subpoenaed jury venire member. The Defendant does not suggest that the venire was improperly drawn or that the judge improperly dismissed any prospective jurors; nor does he suggest that prospective jurors were not served. The Defendant shows neither how he was denied a fair trial nor how he was prejudiced by the fact that eighty-three of the prospective jurors failed to show up. Therefore, we find this argument is also without merit.

ASSIGNMENT OF ERROR NO. 4
By assignment of error number four, the Defendant argues that the trial court erred by ruling that he was competent to stand trial and assist counsel. The Defendant does not argue that La.Code Crim.P. art. 647 is unconstitutional, rather the Defendant contends it fails to provide for sufficient constitutional protections for a juvenile tried as an adult because it does not require a direct colloquy between the trial judge and the juvenile nor does it require testimony from the family concerning the juvenile's mental history.
The record reveals that a Sanity Commission was appointed pursuant to the Defendant's motion. Two separate hearings were had wherein the members of the sanity commission testified that the Defendant was capable of assisting counsel in his defense and that the Defendant understood the proceedings and was competent to stand trial. At the hearings, the State and the defense were each given the opportunity to examine the doctors appointed to examine the Defendant and to call additional witnesses. Both sides rested without calling additional witnesses. During the hearings, the Defendant chose not to take the stand. Thus, we find the requirements of La.Code Crim.P. art. 647 were met and that the Defendant's argument lacks merit.

ASSIGNMENT OF ERROR NOS. 5 & 6
By assignment of error number five, the Defendant argues that the trial court erred by not granting his Motion for Mistrial due to the fact that the jury was told that he was not present in the courtroom and that he had to be brought into the courtroom. By assignment of error number six, the Defendant contends that the trial court erred by not granting his Motion for Mistrial because two members of the jury venire saw him in shackles. The Defendant further argues that as a result of these two incidents, he was prejudiced and unable to receive a fair trial.
When prejudicial conduct inside the courtroom makes it impossible for a defendant to obtain a fair trial, a mistrial may be granted. La.Code Crim.P. art. 775. However, the determination in that regard rests within the sound discretion of the trial judge, and the denial of a motion for mistrial will not be disturbed on appeal absent an abuse of that discretion. Mistrial should be ordered only where prejudice suffered by the defendant has deprived him of any reasonable expectation of a fair trial. State v. Hopkins, 626 So.2d 820 (La.App. 2 Cir.1993), citing State v. Smith, 433 So.2d 688 (La.1983).
With regard to the Defendant's presence in the courtroom, the record shows that while welcoming the jury venire the following took place:
BY THE COURT: ... Mr. Sheriff, could I see you, please?

*730 BY THE BAILIFF: (No audible response.)
BY THE COURT: Yeah.
(BENCH CONFERENCE BETWEEN COURT AND THE BAILIFF).
BY THE COURT: Counsels, approach.
(BENCH CONFERENCE BETWEEN COURT AND COUNSEL.)
BY THE COURT:
Ladies and gentlemen, it's not Monday, but this week has started off in a very different way. We have an important element that's missing in this case, like the defendant. So I won't offend your intelligence by trying to have you guess. So what I'm going to do is take a five minute recess. I'll ask, please, that you maintain, keep your seats, and we'll resume as soon as the defendant is present.
(THEREUPON, COURT RECESSED AT 9:54 A.M.)
(COURT RECONVENED AT 10:30 A.M. THE DEFENDANT, JOSEPH GENE GREEN, WAS PERSONALLY PRESENT, TOGETHER WITH HIS ATTORNEY, MR. W.T. ARMITAGE, AND THE FOLLOWING TOOK PLACE IN OPEN COURT:)
In response to the Defendant's Motion for a Mistrial with regard to the court's reference to his absence in the courtroom, the judge stated:
Counsel, you knew your client was not here. But I've entertained enough argument on that. As to tainting the venire, the Court denies that. I do not believe that the action that took place was sufficient to taint this venire and to affect, ultimately, the determination of the guilt or innocence of the defendant in this case. What happened there was an inconvenience and an oversight, but certainly nothing that would go to the guilt or innocence of the defendant and show anything other than that he was not brought to court.
For most potential jurors, it is understood and, many times, even some defendants are sitting in shackles, though they're not paraded before the venire in shackles. This was not the case here.
The apparel of the defendant, the Court made note to the bailiff that he is to be in civilian clothes, and that the Court wanted to review the type of civilian clothes he was in before he was brought into the courtroom. So precautions were taken.
The argument that counsel makes is insufficient to grant the mistrial motion.
We find the Defendant has neither demonstrated any prejudice nor does the trial judge's denial of a mistrial constitute an abuse of discretion. Thus, assignment of error number five, likewise, lacks merit.
In his sixth assignment of error, the Defendant alleges that the trial court erred in not granting a mistrial because two members of the jury venire saw him in shackles during a recess.
In State v. Brewington, 605 So.2d 4, 5 (La.App. 3 Cir.1992), this court said "it is clear that a defendant should not be shackled or handcuffed before the court except under exceptional circumstances. The momentary use of shackles for the limited purpose of transporting an accused does not mandate a mistrial." State v. Wilkerson, 403 So.2d 652 (La.1981); State v. McMellon, 525 So.2d 1094 (La.App. 3 Cir.), writ denied, 532 So.2d 149 (La.1988).
The record shows that after a recess taken during voir dire a Motion for Mistrial was requested because "at least two jurors, one of them being Mr. Aldolphis Wilson, observed my client in shackles being lead into [record later states that it was away from] the courtroom." The record shows that the State subsequently challenged Mr. Wilson for cause, and the court dismissed him. With regard to the second prospective juror who was believed to have seen the Defendant in shackles, this court is given no information on who that may have been.
*731 In any event, the Defendant has not shown how he was prejudiced in this matter. Therefore, we also find that assignment of error number six is without merit.

ASSIGNMENT OF ERROR NO. 8
By assignment of error number eight, the Defendant contends that the trial court erred by excusing three potential jurors based on the State's challenge for cause.
Initially, we note that a defendant does not have grounds to complain about the granting of a state's challenge for cause, unless the effect of the ruling is to allow the state to exercise more peremptory challenges than is allowed by law. State v. Joe, 28,198 (La.App. 2 Cir. 7/26/96), 678 So.2d 586, 589; State v. Fleeks, 26,270, (La.App.2d Cir. 3/1/95), 651 So.2d 370; La.Code Crim.P. art. 800 B. The record indicates that the State exercised only five of the twelve peremptory challenges allotted to it by law. La.Code Crim.P. art. 799; Thus, the Defendant's argument is without substance.
Even if the argument were properly before the court, during voir dire of prospective jurors, Margaret Ann Butler informed the court that she was the next door neighbor of Lonnie Ray Simmons, and that she had a friendly relationship with the family. The record shows that Mr. Simmons was also the next door neighbor of the victim, and that his son had also been charged with the murder of the victim. Mr. Simmons was scheduled to testify for the defense. Even under those circumstances, Ms. Butler indicated that she felt that she could be a fair and impartial juror.
A prospective juror's statement that he will be fair and impartial is not binding on the trial court. A venireman which would normally be dismissed for cause, may be rehabilitated if the court is satisfied that he can render an impartial verdict according to the evidence. State v. Broadway, 440 So.2d 828 (La.App. 2d Cir. 1983). However, a trial judge is afforded great discretion in determining whether cause has been shown to reject a prospective juror or whether a prospective juror has been rehabilitated by questioning. Such determinations will not be disturbed unless a review of the voir dire as a whole indicates an abuse of discretion. State v. Bourque, 622 So.2d 198 (La.1993); State v. Fairley, 25,951 (La.App. 2 Cir.1994), 645 So.2d 213 (on rehearing) writs denied 94-1940 (La.11/11/94), 645 So.2d 1152; 94-2909 (La.3/24/95), 651 So.2d 287.
In the present case, although Ms. Butler stated that she believed that she could be a fair and impartial juror, due to the fact that she lived next door to one of the co-perpetrators of the crime, that her neighbor whom she maintained a friendly relationship with was scheduled to testify for the defense, and that she lived two doors from the victim of the crime, the trial court did not err in excusing her for cause.
The Defendant further contends that the trial court improperly dismissed Phillip Green and Stephanie Stockton for cause. During voir dire, the court asked the prospective jurors whether they had ever been arrested for or convicted of a crime. There was no response from either juror. The State challenged for cause both of these prospective jurors based on the fact that they had been convicted of crimes, but had not revealed this to the judge when questioned. The record shows that Ms. Stockton pled guilty to a charge of theft less than one hundred dollars, and that Mr. Green had two DWI convictions.
In State v. Prince, 29,208 (La.App. 2 Cir. 1/24/97), 688 So.2d 643, 651, a challenge for cause based upon the fact that the juror had been convicted of a crime and served time was found to have been properly granted despite the fact that the record did not show whether the juror had been convicted of a misdemeanor or a felony. In Prince, the court went on to state that even if the prospective juror was erroneously dismissed, the erroneous granting of a challenge for cause to a *732 prospective juror is not reversible error unless the effect of the ruling is to allow the state more peremptory challenges than the law provides. La.Code Crim.P. art. 800; State v. Vergo, 594 So.2d 1360 (La. App. 2 Cir.1992), writ denied, 598 So.2d 373 (La.1992).
The trial judge did not abuse his discretion when he dismissed these two jurors for failing to disclose information concerning their criminal history. This assignment of error, too, is without merit.

ASSIGNMENT OF ERROR NO. 9
By assignment of error number nine, the Defendant contends that the trial court erred by permitting the State to introduce into evidence numerous gruesome photographs, which were so prejudicial as to outweigh any probative value. The Defendant argues that the jury was well aware that the victim had been beaten and stabbed to death. The Defendant further contends that because he was not alleged to have committed the actual beating and stabbing that the photographs were not necessary to show that he participated in the crime.
In State v. Bourque,[1] 622 So.2d 198 (La. 1993), the Louisiana Supreme Court stated:
The admission of gruesome photographs will not be overturned unless it is clear the prejudicial effect of the photographs outweighs their probative value. State v. Lindsey, 543 So.2d 886, 894-95 (La. 1989), cert. denied, 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 798 (1990); State v. Eaton, 524 So.2d 1194, 1201 (La.1988), cert. denied, 488 U.S. 1019, 109 S.Ct. 818, 102 L.Ed.2d 807 (1989). "This court will not find that photographs were admitted in error unless they are so gruesome as to overwhelm the jurors' reason and lead them to convict the defendant without sufficient other evidence." Copeland, 530 So.2d at 543; Eaton, 524 So.2d at 1201. The fact the photographs are gruesome does not, in and of itself, prevent their admissibility. Comeaux, 514 So.2d at 97.
Post-mortem photographs at the scene or autopsy photographs of murder victims are admissible to prove corpus delicti, to provide positive identification of the victim, to corroborate other evidence establishing the cause of death, the manner in which death occurred, and the location, severity, and number of wounds. Copeland, 530 So.2d at 543; Eaton, 524 So.2d at 1201; Comeaux, 514 So.2d at 96-97. This court has held "the defendant cannot deprive the State of the moral force of its case by offering to stipulate to what is shown in photographs." State v. Perry, 502 So.2d 543, 559 (La.1986), cert. denied, 484 U.S. 872, 108 S.Ct. 205, 98 L.Ed.2d 156 (1987); State v. Harvey, 358 So.2d 1224, 1229 (La.1978).
Bourque, 622 So.2d at 236.
The photographic evidence offered was relevant and probative in proving the State's case against the Defendant. La. Code Evid. art. 403. The photographs at the scene corroborated the testimony that the victim's bloody and bruised body was found in her bedroom closet. The autopsy photographs dramatically show the serious nature of the injuries inflicted upon the victim. These photographs help establish the perpetrators' intent to kill or to cause great bodily harm. The remainder of the photographs show the inside and outside layout of the home, including places where blood spatters, a bloody shoe print, and knives were found.
Although there are a large number of photographs, very few are repetitive. With regard to the gruesomeness of the photographs of the victim, although they are difficult to view, these photographs were properly admitted. Compare State v. Perry, 502 So.2d 543, 558 (La.1986) (color *733 or photographs of five victims shot in the head showing destruction of the skulls were held to be admissible); State v. Copeland, 530 So.2d 526, 542-43 (La.1988)(color photograph depicting child's head which had been partially blown away by shotgun blast held admissible). Therefore, this assignment is without merit.

ASSIGNMENT OF ERROR NOS. 7 AND 10
By these two assignments of error, the Defendant contends that the court erred when it did not allow the typed statement of Fred Bush to be introduced at this trial. The Defendant argues that he was prejudiced because a co-defendant, Jerry Joseph, testified at trial for the State, but another co-defendant, Fred Bush, invoked the Fifth Amendment when subpoenaed to testify on behalf of the defense. The Defendant contends that he has the right to present a defense and that because Fred Bush invoked the Fifth Amendment he should have had the right to introduce a typed statement previously given by Fred Bush.
The Defendant filed a Motion in Limine and oral argument on the matter was heard on March 8, 1998. The judge stated that he would withhold his ruling until the statement was offered into evidence. During the trial, outside the presence of the jury, Frederick Bush was sworn in, testified that he had no information concerning the murder of the victim, and then proceeded to plead the Fifth Amendment with regard to all questions concerning the murder. Following Bush's testimony, the Defendant offered into evidence the typed statement of Bush, which the Defendant stated would exculpate him. The court formally denied the Defendant's Motion in Limine. Based on the fact that the statement of Bush was properly placed in the record through the Motion in Limine, and the judge ruled on the motion, we will consider the issue.
In State v. Van Winkle, 658 So.2d 198 (La.1995), the Louisiana Supreme Court stated:
A criminal defendant has the constitutional right to present a defense. U.S. Const. amend. 6; La. Const. Art. 1 § 16; Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); State v. Gremillion, 542 So.2d 1074 (La. 1989); State v. Vigee, 518 So.2d 501 (La.1988). Due process affords the defendant the right of full confrontation and cross examination of the State's witnesses. Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); State v. Mosby, 595 So.2d 1135 (La.1992). It is difficult to imagine rights more inextricably linked to our concept of a fair trial.
Evidentiary rules may not supersede the fundamental right to present a defense. In State v. Gremillion, supra, the defendant attempted to introduce evidence that third parties, rather than the defendant, had killed the victim. The evidence consisted of a statement that the victim had made to a sheriffs deputy who investigated the crime. The statement was that he had been attacked and beaten by three white males. The trial court and the Court of Appeal both held the statement was inadmissible hearsay. We agreed that the statement was hearsay and that it did not meet any applicable exception (res gestae, dying declaration, business records). However, we concluded that normally inadmissible hearsay may be admitted if it is reliable, trustworthy and relevant, and if to exclude it would compromise the defendant's right to present a defense. See Chambers v. Mississippi, 410 U.S. at 302, 93 S.Ct. at 1049. Exclusion of the statement in Gremillion impermissibly impaired the defendant's fundamental right. 542 So.2d at 1079, citing State v. Washington, 386 So.2d 1368 (La.1980).
Van Winkle, 658 So.2d at 201.
Likewise, in State v. Vigee, 518 So.2d 501 (La.1988) the Louisiana Supreme Court held that hearsay evidence supporting the defendant's theory of the case and *734 undermining the State's lead witnesses was relevant and excluding it mandated reversal.
In the present case, the Defendant argued in brief that the statement of Bush contradicted the statement of Joseph. We have read the trial testimony of Jerry Joseph and the typed statement given by Bush. While the Defendant is correct in stating that there are discrepancies between the two statements, they are not such that a reasonable jury would likely have found that the Defendant was not involved in the crime. We further note that the typed statement given by Bush was given before he was arrested and charged as a co-defendant for the first degree murder of the victim. At the time of the Defendant's trial, Bush had been formally charged with the first degree murder of the victim and was an inmate at the Rapides Parish Detention Center.
Upon review of the record and Bush's statement, the typed statement was neither shown to be reliable and trustworthy, nor was it relevant to protect the Defendant's right to a defense. Therefore, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 11
By assignment of error number eleven, Defendant contends that the trial judge erred when he denied a requested jury charge. The Defendant requested that the following jury charge be read:
The mere fact that the defendant was found at the scene of a crime does not allow for an inference that the defendant is guilty of committing the crime.
In presenting this charge to the judge for consideration, the Defendant relied on State v. Walker, 369 So.2d 1345 (La.1979) and State v. Johnson, 404 So.2d 239 (La. 1981). A review of these two cases shows that this charge does not properly represent the law with regard to the charge the Defendant faced. In State v. Harvey, 463 So.2d 706, (La.App. 4 Cir.1985), the fourth circuit considered Walker and Johnson. The charge given in those two cases reads:
The mere presence of someone in the area where the controlled dangerous substance is found, or mere association with a person found to be in possession of the contraband, is insufficient to constitute constructive possession. State v. Walker, supra. In State v. Johnson, 404 So.2d 239 (La.1981) the Louisiana Supreme Court stated:
Proximity to a drug or association with a possessor may establish a prima facie case of drug possession when colored by other evidence. United States v. Staten, 581 F.2d 878 (D.C.Cir.1978). However, mere association or proximity, without more, is insufficient. Arellanes v. United States, 302 F.2d 603 (9th Cir.1962); State v. Cann, 319 So.2d 396 (La., 1975). Dominion over the illegal substance must be proven. State v. Walker, 369 So.2d 1345 (La., 1979).
Harvey, 463 So.2d at 708.
Based on the case law the Defendant cited, the charge the Defendant requested was based on a jury charge that dealt with controlled dangerous substances and possession of contraband, not presence at the scene of a murder.
Further, the Defendant fails to demonstrate what prejudice he suffered as a result of the jury charge not being given. La.Code Crim.P. art. 802 mandates that a trial court shall charge the jury as to the law applicable in the case. A requested special charge shall be given by the court if it does not require qualification, limitation or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge which is given. La.Code Crim.P. art. 807.
In this case, the State charged Defendant with homicide under the provisions of La.R.S. 14:30.1. The State therefore had to show more than "the mere fact that the Defendant was found at the scene of a crime." The judge read jury instructions which informed the jurors that mere presence *735 was not enough, but rather overt acts on the part of the Defendant were required to be found. The judge instructed the jury that a person could be convicted as a principal to a crime, whether he was present or absent, and whether he directly committed the act, aided and abetted in its commission, or directly or indirectly counseled or procured another to commit the crime. The judge then instructed the jury on the elements of second degree murder, the fact that it was a specific intent crime, and what specific intent required. We find the trial judge properly instructed the jury regarding the elements that the State was required to prove, including an explanation to the jurors that the Defendant had to be involved in an overt manner to be convicted of the crime, that mere presence was not sufficient. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 12
By this assignment of error, the Defendant contends that the trial court erred when it permitted the State to introduce Exhibit 35 (bag with black tennis shoes) and State Exhibit 44 (the impression on a sheet of paper of a right sneaker).
In State v. Forrest, 95-31 (La.App. 5 Cir. 2/14/96), 670 So.2d 1263, the court stated:
With some exceptions, all relevant evidence is admissible at trial. La.C.E. art. 402. "Relevant evidence" is that which tends to "make the existence of any fact that is of consequence to the determination of the action more probable than it would be without evidence." La.C.E. art. 401. Fruits and physical evidence of a crime as well as weapons used to commit a crime are relevant to show the commission of such crime and are, therefore, generally admissible at trial. State v. Foster, 263 La. 43, 267 So.2d 188 (1972). Relevant evidence may, however, be excluded at trial "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." La.C.E. art. 403.
Before it can be admitted at trial, demonstrative evidence must be properly identified. Accordingly, it must be established that it is more probable than not that the object is the one connected with the crime. The identification may be visual, that is, testimony that the object introduced is the one connected with the case. The identification may also be accomplished through chain of custody, by tracing the object from the time it was seized to the time it was offered in evidence. State v. Sweeney, 443 So.2d 522 (La.1983); State v. Landry, 388 So.2d 699 (La.1980), cert. denied, 450 U.S. 968, 101 S.Ct. 1487, 67 L.Ed.2d 618 (1981); State v. Kelson, 94-263 (La.App. 5th Cir.11/16/94), 646 So.2d 1049; State v. Alexander, 621 So.2d 861 (La.App. 5th Cir.1993), writ granted and remanded for resentencing, 629 So.2d 376 (La.1993).
Forrest, 670 So.2d at 1267.
The tennis shoes and the impression were relevant to the trial in that they were physical evidence gathered as a result of the investigation after the crime. During the trial, the jury was informed that the tennis shoes were recovered from Fred Gradley, a co-defendant, while he was in the Rapides Parish Jail. A photograph of a bloody shoe print was taken at the scene of the crime. Gary Kanaskie, Special Agent of the FBI, testified that in his expert opinion Gradley's sneaker corresponded to the size and design of the bloody shoe print depicted in the photograph. The impression gave a clear representation of the design on the sole of the shoe. The tennis shoes, the photograph of the bloody shoe print, and the impression of the shoe sole, along with numerous other physical and pictorial evidence were all relevant in showing that a murder had been committed and in establishing and supporting the testimony given by various witnesses. Therefore, this argument is without merit.

*736 ASSIGNMENT OF ERROR NO. 14
By assignment of error number fourteen, the Defendant argues that the trial court erred by imposing an excessive sentence on him and by not granting his Motion to Reconsider Sentence. The Defendant was found guilty of second degree murder, and subsequently sentenced to life imprisonment at hard labor to be served without benefit of parole, probation or suspension of sentence. Defendant was sentenced in accordance with the mandatory sentence given in La.R.S. 14:30.1 and was not subject to the judge's discretion. Therefore, the Defendant's argument is without merit.

SUPPLEMENTAL ASSIGNMENT OF ERROR NO. 1
By his first supplemental assignment of error, the Defendant contends that the trial court erred when it allowed a co-defendant, Jerry Joseph, to testify against Defendant in exchange for a reduced plea of manslaughter in violation of the public bribery statute. The Defendant relies on United States v. Singleton, 144 F.3d 1343 (10th Cir. Kan.1998), wherein the United States Court of Appeals for the Tenth Circuit reversed a conviction where the government promised leniency to a witness in return for his testimony in a conspiracy to distribute cocaine case.
A review of the record reveals that the Defendant did not object to the testimony of Joseph prior to or during the trial. Accordingly, he is precluded from raising this issue as an error. La.Code Crim.P. art. 841. Further, this Court has recently considered this matter with reference to co-defendants also charged in the death of this victim.. In State v. McCullough, 98-1766 (La.App. 3 Cir. 12/29/98), 737 So.2d 49, writ denied, 99-0259 (La.2/26/99), 738 So.2d 590, this Court issued an opinion on a pretrial supervisory writ application in which it found:
... This very issue has previously been addressed by this court in State v. Jenkins, 508 So.2d 191 (La.App. 3 Cir.), writ denied, 512 So.2d 438 (La.1987). In Jenkins, this court concluded that use of a plea agreement did not render the co-defendant incompetent to testify and that "the defendant's appropriate avenue of relief was the cross-examination of [the testifying co-defendant]." Id. at 194.
We further note that the Singleton decision has not been followed by all of the federal circuits. In fact, it has been vacated by the circuit that originally rendered the decision, and an en banc hearing has been ordered. The Fifth Circuit Court of Appeals in United States v. Haese, 162 F.3d 359 (5th Cir. 1998), concluded that the courts following Singleton were "incorrect and [the Fifth Circuit] will not follow down a path that will throw our criminal system into disarray." Id. at 367.
McCullough, 98-1766.

SECOND SUPPLEMENTAL ASSIGNMENT OF ERROR NO. 2
In brief, the Defendant states that:
The prosecutor introduced State Exhibit No. 14-A-H (several photographs of bloody shoe impressions on hardwood flooring) into evidence. The photographs were of the area between the bedroom where the victim was found and the dining room. Defendant objected because the photographs were not provided during discovery and that the impressions on the hardwood floor were made by a sneaker that was only similar to the one introduced by the prosecution (same size and same design, but not the same shoe). These photographs were of impressions that were not related nor connected to defendant. After the record was lodged in this appeal, the Court of Appeal, Third Circuit ordered the case to be remanded to the Ninth Judicial District Court for an evidentiary hearing relative to the issue of substitute evidence. Appellant reserves all rights as to briefing this issue subsequent *737 to the determination by the district court as to the issue of the photographs.
Defendant was given an opportunity file a supplemental brief on this assignment. This Court has not received a supplemental brief. Hence, under Rule 2-12.4, Uniform Rules-Courts of Appeal, we deem this assignment abandoned.
Accordingly, the conviction and sentence of the district court is affirmed. Further, the district court is directed to inform the Defendant of the provisions of article 930.8 by sending appropriate written notice to the Defendant within ten days of the rendition of this opinion and to file written proof that the Defendant received the notice in the record of the proceedings.
AFFIRMED.
NOTES
[1] State v. Bourque was overruled on another issue. State v. Comeaux, 93-2729 (La.7/1/97), 699 So.2d 16, 21.